# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CARTER PAGE, et al.,

        Plaintiffs,

  v.

DEMOCRATIC NATIONAL COMMITTEE;
DNC SERVICES CORPORATION;
PERKINS COIE LLP; MARC ELIAS; AND
MICHAEL SUSSMANN,

        Defendants.

Case No. 1:20-CV-00671

Hon. Harry D. Leinenweber


## OPENING MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT UNDER RULES 12(b)(2), 12(b)(3), AND 12(b)(6)

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

RELEVANT FACTS ................................................................................................3

    A.    The Parties ..........................................................................................3
    B.    Alleged Defamatory Statements .............................................................4

ARGUMENT ........................................................................................................6

I.     LEGAL STANDARDS ....................................................................................6

II.    THIS CASE MUST BE DISMISSED FOR LACK OF PERSONAL
       JURISDICTION ...........................................................................................8

    A.    The Court Lacks General Jurisdiction ....................................................9
    B.    The Court Lacks Specific Jurisdiction ..................................................12

III.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR LACK OF VENUE ............14

IV.   JURISDICTIONAL INFIRMITIES ASIDE, THE COURT SHOULD DISMISS
       PLAINTIFFS' CLAIMS ON SUBSTANTIVE GROUNDS ...........................................15

         **1.**    The Allegedly Defamatory Statements Are Substantially True ...............19

         **2.**    The Allegedly Defamatory Statements Are Reasonably Capable Of
             An Innocent Construction ......................................................................21

         **3.**    Plaintiffs Fail To Allege Actual Malice ..................................................22

    C.    Plaintiffs Fail To Plausibly Allege False Light.......................................24
    D.    Plaintiffs Fail To Plausibly Allege Conspiracy .....................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ABN AMRO, Inc. v. Capital Int'l Ltd.*,
   595 F. Supp. 2d 805 (N.D. Ill. 2008) ........................................................................8

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
   751 F.3d 796 (7th Cir. 2014) .............................................................................8, 12

*Am. Family Mut. Ins. Co. v. Krop*,
   120 N.E.3d 982 (Ill. 2018) ...................................................................................17

*In re Ameritech Corp.*,
   188 F.R.D. 280 (N.D. Ill. 1999) ..........................................................................28

*Anderson v. Vanden Dorpel*,
   172 Ill. 2d 399 (1996) .........................................................................................27

*Arpaio v. Cottle*,
   404 F. Supp. 3d 80 (D.D.C. 2019) ......................................................................23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................................7

*Atkins v. City of Chicago*,
   631 F.3d 823 (7th Cir. 2011) .................................................................................7

*BASF AG v. Great Am. Assurance Co.*,
   522 F.3d 813 (7th Cir. 2008)), *rev'd on other grounds sub nom. Huon v.*
   *Denton*, 841 F.3d 733 (7th Cir. 2016) ................................................................18

*Bd. of Forensic Document Exam'rs, Inc. v. Am. Bar Ass'n*,
   287 F. Supp. 3d 726 (N.D. Ill. 2018) .............................................................24, 25

*Bd. of Forensic Document Exam'rs, Inc. v. Am. Bar Ass'n*,
   922 F.3d 827 (7th Cir. 2019) ...............................................................................15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................................7

*Blair v. Nevada Landing P'ship*,
   369 Ill. App. 3d 318 (2d Dist. 2006) ...................................................................18

*BNSF Ry. Co. v. Tyrrell*,
   137 S. Ct. 1549 (2017) ........................................................................................11

*Bovinett v. HomeAdvisor, Inc.*,
No. 17 C 6229, 2018 WL 1234963 (N.D. Ill. Mar. 9, 2018) ..............................................9, 13

*Brownmark Films, LLC v. Comedy Partners*,
682 F.3d 687 (7th Cir. 2012) ..............................................................7

*Bryson v. News Am. Publ'ns, Inc.*,
174 Ill. 2d 77 (1996) ..............................................................21

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ..............................................................12

*Carroll v. Gibbar*,
2019 IL App (4th) 180418-U ..............................................................18

*Carruth v. Michot*,
No. A-15-CA-189-SS, 2015 WL 6506550 (W.D. Tex. Oct. 26, 2015) ..................................11

*Coghlan v. Beck*,
984 N.E.2d 132 (Ill. App. Ct. 1st Dist. 2013) ..............................................23

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ..............................................................8, 9, 11

*Deripaska v. Associated Press*,
282 F. Supp. 3d 133 (D.D.C. 2017) ..............................................................23

*Duncanson v. Wine & Canvas IP Holdings LLC*,
No. 1:16-cv-00788, 2017 WL 6994541 (S.D. Ind. Apr. 20, 2017) ..................................10

*Emery v. Ne. Illinois Reg'l Commuter R.R. Corp.*,
377 Ill. App. 3d 1013 (1st Dist. 2007) ..............................................................16

*F:AJ Kikson v. Underwriters Labs, Inc.*,
492 F.3d 794 (7th Cir. 2007) ..............................................................26

*Fleming v. Chicago Sch. of Prof'l Psychology*,
No. 15 C 9036, 2017 WL 4310536 (N.D. Ill. Sept. 28, 2017) ..................................17

*Gatto v. Indian Prairie Sch. Dist. 204*,
No. 11 C 6405, 2012 WL 1030523 (N.D. Ill. Mar. 26, 2012), *aff'd*, 508 F.
App'x 554 (7th Cir. 2013) ..............................................................18

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974) ..............................................................22

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ..............................................................8, 9

*Green v. Rogers,*
    234 Ill. 2d 478 (2009) ................................................................................18

*Grund v. Donegan,*
    298 Ill. App. 3d 1034 (1st Dist. 1998) ........................................................28

*Harris v. Quadracci,*
    48 F.3d 247 (7th Cir. 1995) ........................................................................22

*Harrison v. Chicago Sun-Times, Inc.,*
    341 Ill. App. 3d 555 (1st Dist. 2003) .....................................................19, 20

*Hayward v. Taylor Truck Line, Inc.,*
    No. 15-cv-00866, 2015 WL 5444787 (N.D. Ill. Sept. 14, 2015) ...................14

*Hinton v. Vonch, LLC,*
    No. 18 CV 7221, 2019 WL 3554273 (N.D. Ill. Aug. 2, 2019) .......................16

*Hub Grp., Inc. v. PB Express, Inc.,*
    No. 04 C 3169, 2004 U.S. Dist. LEXIS 20846 (N.D. Ill. Oct. 14, 2004) ..............8

*Huon v. Breaking Media, LLC,*
    75 F. Supp. 3d 747 (N.D. Ill. 2014) ............................................................18

*Huon v. Denton,*
    841 F.3d 733 (7th Cir. 2016) ........................................................................7

*Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.,*
    227 Ill. 2d 381 (2008) ................................................................................18

*Incandela v. Great-West Life & Annuity Ins. Co.,*
    No. 07-cv-7051, 2010 WL 438365 (N.D. Ill. Feb. 4, 2010) .........................10

*Jacobson v. CBS Broad.,*
    19 N.E.3d 1165 (Ill. App. Ct. 1st Dist. 2014) .............................................22

*Jankovic v. Int'l Crisis Grp.,*
    822 F.3d 576 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 1434 (2017) ...................22

*John v. Tribune Co.,*
    24 Ill. 2d 437 (1962) ..................................................................................21

*Kapotas v. Better Gov't Ass'n,*
    30 N.E.3d 572 (Ill. App. Ct. 5th Dist. 2015) ...........................................21, 24

*Kiebala v. Boris,*
    No. 1:16 CV 7478, 2017 WL 4339947 (N.D. Ill. Sept. 29, 2017).................27

*Kirchner v. Greene*,
   294 Ill. App. 3d 672 (1st Dist. 1998) ........................................................24

*KM Enters., Inc. v. Global Traffic Techs., Inc.*,
   725 F.3d 718 (7th Cir. 2013) ...................................................................14

*Kromrey v. U.S. Dep't of Justice*,
   423 F. App'x 624 (7th Cir. 2011) ...............................................................7

*Lee v. Radulovic*,
   No. 94 C 930, 1994 WL 384010 (N.D. Ill. July 20, 1994) ..................................25

*Lee v. Radulovic*,
   No. 94 C 930, 1994 WL 502844 (N.D. Ill. Sept. 13, 1994)................................23

*Lovgren v. Citizens First Nat'l Bank of Princeton*,
   126 Ill. 2d 411 (1989) .................................................................15, 24, 25

*Ludlow v. Northwestern Univ.*,
   79 F. Supp. 3d 824 (N.D. Ill. 2015) ......................................................24, 25

*Mauvais-Jarvis v. Wong*,
   987 N.E.2d 864 (Ill. App. Ct. 1st Dist. 2013) ...........................................17, 25

*Mitchell v. Plano Police Dep't*,
   No. 16-cv-07227, 2017 WL 4340118 (N.D. Ill. Sept. 29, 2017)......................17, 19

*Mizrachi v. Ordower*,
   No. 17 C 8036, 2019 WL 918478 (N.D. Ill. Feb. 25, 2019)............................10, 11

*Monco v. Zoltek Corp.*,
   342 F. Supp. 3d 829 (N.D. Ill. 2018) ..........................................................14

*Mouloki v. Epee*,
   No. 14 C 5532, 2016 WL 910496 (N.D. Ill. Mar. 10, 2016) .................................24

*Muzikowski v. Paramount Pictures Corp.*,
   322 F.3d 918 (7th Cir. 2003) ...................................................................15

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964)............................................................................23

*OnTap Premium Quality Waters, Inc. v. Bank of N. Ill.*,
   262 Ill. App. 3d 254 (2d Dist. 1994)...........................................................26

*Parker v. House O'Lite Corp.*,
   324 Ill. App. 3d 1014 (1st Dist. 2001) .........................................................19

*Phillips v. Prudential Ins. Co. of Am.*,
  714 F.3d 1017 (7th Cir. 2013) ........................................................................8, 20, 21

*Premier Transp. Ltd. v. Nextel Commc'ns, Inc.*,
  No. 02 C 4536, 2002 WL 31507167 (N.D. Ill. Nov. 12, 2002) ...............................26

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
  338 F.3d 773 (7th Cir. 2003) .................................................................................8

*Reuter v. MasterCard Int'l, Inc.*,
  397 Ill. App. 3d 915 (5th Dist. 2010)....................................................................25

*Rivera v. Lake Cty.*,
  974 F. Supp. 2d 1179 (N.D. Ill. 2013) ...................................................................19

*Ruhrgas AG v. Marathon Oil Co.*,
  526 U.S. 574 (1999).................................................................................................7

*Schmude v. Sheahan*,
  312 F. Supp. 2d 1047 (N.D. Ill. 2004) ...................................................................5

*Simons v. Ditto Trade, Inc.*,
  63 F. Supp. 3d 874 (N.D. Ill. 2014) ................................................................26, 27

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)...................................................................................................7

*Sterling Fed. Bank, FSB v. Credit Suisse First Boston Corp.*,
  No. 07-C-2922, 2008 WL 4924926 (N.D. Ill. Nov. 14, 2008) ...............................26

*Stoller v. Costco Wholesale Corp.*,
  No. 19-cv-140, 2020 WL 247459 (N.D. Ill. Jan. 16, 2020)....................................16

*Suarez v. Kwoks Int'l Trading, Inc.*,
  No. 05 C 6979, 2007 WL 2874216 (N.D. Ill. Sept. 25, 2007).................................10

*Sunny Handicraft (H.K.) Ltd. v. Edwards*,
  No. 16 C 4025, 2017 WL 1049842 (N.D. Ill. Mar. 20, 2017) .................................12

*Tamburo v. Dworkin*,
  601 F.3d 693 (7th Cir. 2010) ............................................................................8, 12

*Tobey v. Chibucos*,
  890 F.3d 634 (7th Cir. 2018) .................................................................................16

*Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*,
  61 Ill. 2d, 137-38 (1975).........................................................................................18

*Walden v. Fiore*,
571 U.S. 277 (2014) ...................................................................................14

*Watkins v. Ingalls Mem'l Hosp.*,
105 N.E.3d 789 (Ill. App. Ct. 1st Dist. 2018) .........................................16

*Watkins v. United States*,
854 F.3d 947 (7th Cir. 2017) ...............................................................20, 21

*Weber v. Cueto*,
253 Ill. App. 3d 509 (5th Dist. 1993) .......................................................17

## STATUTES

735 ILCS 5/13-201 ..............................................................................................15

735 ILCS 5/13-217 ..............................................................................................16

28 U.S.C. § 1391(b) .......................................................................................14, 15

28 U.S.C. § 1406(a) ............................................................................................15

## RULES

Fed. R. Civ. P. 12(b)(2) .....................................................................................1, 8

Fed. R. Civ. P. 12(b)(3) .........................................................................................1

Fed. R. Civ. P. 12(b)(6) .........................................................................................1

Fed. R. Civ. P. 15(a)(2) ........................................................................................28

Defendants—the Democratic National Committee and DNC Services Corporation (together, the "DNC"), Perkins Coie LLP ("Perkins Coie"), Marc Elias, and Michael Sussmann—respectfully submit this memorandum in support of their motion to dismiss the Complaint filed by Plaintiffs Carter Page ("Page"), Global Energy Capital LLC ("Global Energy"), and Global Natural Gas Ventures LLC ("Global Natural Gas"), pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6).

## PRELIMINARY STATEMENT

This lawsuit marks Page's third bite at the apple in as many years. He filed substantively identical claims—arising from the same core allegations of defamation and, in one instance, against virtually the same Defendants—in the Southern District of New York in 2018, and again in the Western District of Oklahoma in 2019. Both cases were dismissed on the pleadings. Now, joined as plaintiff by two companies he purportedly founded, Page brings yet the third iteration of the same claims—nearly three years after his first suit was filed and four years after the allegedly defamatory statements on which his claims are based. There is no reason for this Court to reach a different outcome than the two other federal courts before it, and Defendants respectfully urge the Court to dismiss Page's baseless and improper claims once and for all.

This action arises from statements purportedly made to media and law enforcement regarding possible connections between Page—a public figure and policy advisor to then-candidate Donald Trump—and certain Russian nationals during the lead up to the 2016 presidential election. Specifically, Plaintiffs complain that in the summer of 2016, Defendants allegedly told news publications and government officials that Page had attended two meetings with Russian officials and business executives during a 2016 visit to Moscow. Plaintiffs claim those meetings never occurred, and that the subsequent news articles written on the subject—which Defendants are not alleged to have published—caused Plaintiffs unwanted attention and the

1

loss of speculative business. Plaintiffs therefore conclude that Defendants, in allegedly distributing information about Page's Russia connections, conspired to (and did) defame Plaintiffs and place them in a false light, and tortiously interfered with Plaintiffs' business.

Plaintiffs' claims are both counterfactual and legally deficient. But this Court need not wade into the numerous deficiencies in Plaintiffs' allegations for the simple reason that this is not the appropriate forum to resolve the merits of Plaintiffs' claims. On its face, Plaintiffs' Complaint does not allege a single fact establishing that any Defendant has a substantial connection to Illinois or is otherwise alleged to have committed in Illinois the actions giving rise to Plaintiffs' claims. Plaintiffs concede that neither Mr. Elias nor Mr. Sussmann is domiciled in Illinois, and that neither the DNC nor Perkins Coie is incorporated or headquartered in this State. That obvious lack of any meaningful nexus to Illinois forecloses the exercise of jurisdiction over the parties, and this Court can—and should—dismiss this action accordingly.

In any event, Plaintiff's claims for defamation, false light, and conspiracy (Counts I, II, III, IV, and VI) are stale by several years. Page's first lawsuit, predicated on the same facts and circumstances, was filed in New York federal court in 2017—against the publishers of the articles he claims were defamatory. Page chose not to sue Defendants then, and instead filed a second lawsuit—after his first was unsuccessful—in Oklahoma in 2018. But even at that point, Page's claims were untimely by over a year—and Plaintiffs' attempt to recycle these claims a third time is barred by a limitations period that expired, at the latest, in 2017.

Beyond these jurisdictional infirmities and limitations issues, Plaintiffs' claims also fail on the merits. Even if the statements at issue—published by third parties named in Page's first failed lawsuit—could be attributed to Defendants, those statements were substantially true, and thus cannot be defamatory as a matter of law. As a public figure, Page is required to plausibly plead

that any purportedly defamatory remarks were made *with malice*, and the Complaint falls well short of that high bar.  Plaintiffs' claim of conspiracy (Count VI) fails for the same reason.

Finally, as to Count V (Tortious Interference with Prospective Business Interest), Plaintiffs make no attempt to allege—even in conclusory fashion—that Defendants' conduct was directed at any third party.  Nor, apart from broad-brushed assertions of harm, have Plaintiffs alleged that Defendants' purported conduct was a proximate cause of any lost business.

## RELEVANT FACTS[1]

### A.    The Parties

Page is a "foreign policy scholar" and businessman who, in 2016, served as one of five members of then-candidate Donald J. Trump's foreign policy advisory committee.  Compl. ¶¶ 2, 31.  Page is the Managing Partner of Global Energy and Global Natural Gas, Oklahoma-based companies specializing in energy sector investments and advising in emerging markets, including Russia.  Oklahoma Compl. ¶ 7, *Page v. Democratic Nat'l Comm.*, No. 5:18-cv-01019 (W.D. Okla. Oct. 15, 2018), Dkt. No. 1 (the "Oklahoma Complaint").  Plaintiffs have established business "relationships" with Russian energy companies Gazprom and Tatneft, as well as state-owned Kazakhstan energy companies Samruk-Kazyna and KazMunayGas.  Compl. ¶ 139.

The DNC is a Washington, D.C.-based national committee dedicated to electing to public office local, state, and national candidates of the Democratic Party.  *Id.* ¶ 14.  Defendant Perkins Coie is a law firm organized as a Limited Liability Partnership with its principal place of business in Seattle, Washington.  *Id.* ¶ 15.  And Mr. Elias and Mr. Sussmann are Perkins Coie partners who work in the firm's Washington, D.C. office.  *Id.* ¶¶ 16-17.  Neither is domiciled in Illinois.  *Id.* ¶ 18.

---

[1]     Solely for the purpose of this Motion, the facts pled in Plaintiffs' Complaint are assumed to be true.

### B.     Alleged Defamatory Statements

Plaintiffs allege that in April 2016, Defendants worked with a private investigation firm, Fusion GPS, and an independent contractor, Christopher Steele, to conduct political opposition research. Compl. ¶¶ 41, 46. According to Plaintiffs, Defendants in turn provided untrue information gleaned from that opposition research to media outlets and government officials, which led to the publication of certain news articles identified in the Complaint. *Id.* ¶¶ 52, 53, 56, 57, 59. Plaintiffs specifically allege that Defendants were involved in publishing a July 29, 2016 Company Intelligence Report 2016/94, colloquially known as the "Steele Dossier." The Steele Dossier formed the basis of a September 23, 2016 Yahoo News article, and was eventually republished in a January 10, 2017 BuzzFeed, Inc. article. *Id.* ¶¶ 48, 62, 74.[2] Plaintiffs do not allege that the Steele Dossier or related articles made any mention of Global Energy or Global Natural Gas.

On September 23, 2016, Yahoo News published an article titled "U.S. intel officials probe ties between Trump adviser and Kremlin" (the "Yahoo Article"). *Id.* ¶¶ 60, 62. Plaintiffs allege that the article contained two false statements that Steele and Fusion GPS made at Defendants' behest. *Id.* ¶ 62. *First*, the Yahoo Article stated that Page "met with Igor Sechin, a longtime Putin associate and former Russian deputy prime minister" and that, during the meeting, "Sechin raised the issue of the lifting of [U.S.] sanctions" imposed on him. *Id.* Mr. Sechin was the Executive Chairman of Rosneft when these statements were made. *Id. Second*, the Yahoo Article stated that "U.S. intelligence agencies have also received reports that Page met with another top Putin aide while in Moscow – Igor Diveykin," and that Diveykin was "believed . . . to have responsibility for intelligence collected by Russian agencies about the U.S. election." *Id.* Mr. Diveykin was a senior

---

[2]     Although Plaintiffs purport to describe "four categories" of allegedly defamatory statements, the only statements identified are from the Steele Dossier, the Yahoo Article, and the BuzzFeed Article.

official in President Putin's administration.  *Id.*  The Yahoo Article attributed this information to a "Western intelligence source," whom Plaintiffs allege to be Christopher Steele—not any of the Defendants.  *Id.* ¶ 63.  Nevertheless, Plaintiffs allege that Defendants "directed" Fusion GPS and Steele to provide the information reported in the Yahoo Article.  *Id.* ¶¶ 71-72.

Subsequently, on January 10, 2017, BuzzFeed, Inc. published an article titled, "These Reports Allege Trump Has Deep Ties To Russia" (the "BuzzFeed Article").  Oklahoma Compl. ¶ 31.  The BuzzFeed Article included the Steele Dossier and discussed certain national security matters surrounding President Trump and his political ties to Russia.  Compl. ¶ 74.  Plaintiffs allege the Steele Dossier, in turn, contained statements regarding two meetings Page was said to have attended while in Moscow.  *Id.* ¶ 48.  Again, Plaintiffs attribute these statements to Fusion GPS and Steele, alleging that Defendants "directed" the defamatory statements by using Fusion GPS and Steele as "subcontractors who tailored and disseminated" the actual statements.  *Id.* ¶ 71.

Page further alleges that Defendants disseminated the Steele Dossier to the FBI and that Mr. Sussmann "passed along information" to the FBI.  *Id.* ¶ 66.  The Complaint does not allege what information Mr. Sussmann purportedly provided, when that information was supplied, or whether that information was false.

On September 14, 2017, Page filed a complaint in U.S. District Court for the Southern District of New York, captioned *Page v. Oath Inc.*, No. 17 Civ. 6990 (LGS) (S.D.N.Y. Sept. 14, 2017), Dkt. No. 1 ("Oath Complaint").[3]  Page sued Oath Inc., the parent company of the HuffPost and Yahoo, and the Broadcasting Board of Governors, alleging defamation, tortious interference with business relations, and violation of the Anti-Terrorism Act stemming from the publication of the Yahoo Article.  Notably, Page chose not to name any of the instant Defendants in that matter.

---

[3]  "[I]t is routine for courts to take judicial notice of both newspaper articles and court records, among other things."  *Schmude v. Sheahan*, 312 F. Supp. 2d 1047, 1064 (N.D. Ill. 2004) (collecting cases).

The Oath Complaint was dismissed after the court refused to exercise supplemental jurisdiction over the state law claims of defamation and tortious interference with business relations. *Page v. Oath Inc.*, No. 17 Civ. 6990, 2018 WL 1406621, at *4 (S.D.N.Y. Mar. 20, 2018). Page was not granted leave to amend based on the court's conclusion that any effort to replead "would be futile, meaning that an amended complaint could not cure all of the infirmities described above." *Id.*

On October 15, 2018, over two years after Page first became aware of the purportedly defamatory statements made about his meetings with Russian nationals, and over eighteen months after Page became aware that Christopher Steele had compiled the information comprising the Steele Dossier, Page filed an untimely complaint in the Western District of Oklahoma. Compl. ¶ 104; *see generally* Oklahoma Compl. That case, too, was quickly dismissed on jurisdictional grounds. Order, *Page v. Democratic Nat'l Comm.*, No. 5:18-cv-01019 (W.D. Okla. Jan. 31, 2109), Dkt. No. 29. Undeterred, however, Page proceeded to file two improper notices of "supplemental authority" following the court's dismissal decision, as well as two motions to alter or amend the court's judgment—both of which the court denied. *See id.* at Dkt. Nos. 31, 33, 34, 37. Ultimately, the court admonished Page and warned that any further filings would result in Page compensating Defendants for attorneys' fees. *See id.* at Dkt. No. 39.

On January 30, 2020, nearly four years after Page learned of the purportedly defamatory statements, Plaintiffs filed the present Complaint. Page largely repeats the same allegations from his two prior failed lawsuits, and this case should meet the same result of dismissal.

## ARGUMENT

## I.   LEGAL STANDARDS

At the outset, this Court lacks jurisdiction over Defendants, and the Court need not—and should not—reach the merits of Plaintiffs' claims. As the Supreme Court has emphasized, "[t]he requirement that jurisdiction be established as a threshold matter . . . is 'inflexible and without

exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (citation omitted); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) ("Personal jurisdiction . . . is an essential element of jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." (internal quotation marks and citation omitted)). "Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Ruhrgas AG*, 526 U.S. at 577. "[U]nless both subject-matter and personal jurisdiction have been established, a district court must dismiss the suit without addressing the substance of the plaintiff's claim." *Kromrey v. U.S. Dep't of Justice*, 423 F. App'x 624, 626 (7th Cir. 2011).

Assuming jurisdiction is established, the Court must determine whether the Complaint alleges "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). Although the Court should assume the truth of well-pled factual allegations and draw reasonable inferences in Plaintiffs' favor, *Huon v. Denton*, 841 F.3d 733, 738 (7th Cir. 2016), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"—and such conclusory allegations "disentitle[] them to the presumption of truth," *Iqbal*, 556 U.S. at 678, 681 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alterations and quotation marks omitted). Rather, Plaintiffs "must plead some facts that suggest a right to relief that is beyond the speculative level." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (internal quotation marks and citation omitted). In deciding a motion to dismiss, the Court may also consider documents incorporated by reference in the Complaint or otherwise subject to judicial notice. *Brownmark Films, LLC v. Comedy Partners*,

682 F.3d 687, 690 (7th Cir. 2012); *see also Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013).

## II.     THIS CASE MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

Plaintiffs' failure to establish personal jurisdiction over any Defendant mandates dismissal of this action in its entirety.  As the parties asserting claims, Plaintiffs "bear[] the burden of demonstrating personal jurisdiction" and, to avoid dismissal under Rule 12(b)(2), must provide sufficient evidence to establish "a prima facie case of personal jurisdiction." *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 818 (N.D. Ill. 2008); *see also Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799, 803-04 (7th Cir. 2014) (remanding with instructions to dismiss for want of personal jurisdiction).  In determining whether personal jurisdiction exists, the Court can look beyond the pleadings. *ABN AMRO, Inc*., 595 F. Supp. 2d at 818.  But any showing of jurisdiction must be "based on specific facts set forth in the record, rather than . . . conclusory allegations." *Hub Grp., Inc. v. PB Express, Inc.*, No. 04 C 3169, 2004 U.S. Dist. LEXIS 20846, at *3-4 (N.D. Ill. Oct. 14, 2004) (Leinenweber, J.) (citing *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 n.13 (7th Cir. 2003)).

The existence and scope of personal jurisdiction turns on "the nature of the defendant's contacts with the forum state." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010).  General— or "all-purpose"—jurisdiction exists only when a defendant's "affiliations with the [forum] are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  "The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence." *Tamburo*, 601 F.3d at 701.  "In contrast . . . specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Goodyear*, 564 U.S. at 919

(citation omitted). Plaintiffs plainly do not—and cannot—meet their burden of establishing either general or specific jurisdiction in this case.

## A. The Court Lacks General Jurisdiction

Plaintiffs come nowhere close to establishing general jurisdiction over any Defendant. "[O]nly a limited set of affiliations with a forum will render a defendant amenable to" all-purpose general jurisdiction. *Daimler*, 571 U.S. at 137. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home"—that is, the corporation's principal place of business or state of incorporation. *Goodyear*, 564 U.S. at 924. Indeed, it is "an exceptional case" when a defendant's contacts with a forum other than its paradigmatic "home" are "so substantial and of such a nature as to render [the defendant] at home in that State." *Daimler*, 571 U.S. at 139 n.19.

Defendants' Illinois contacts are neither extensive nor pervasive, and the Complaint is devoid of any facts to the contrary. Plaintiffs do not (because they cannot) allege that either Mr. Elias or Mr. Sussmann is domiciled in Illinois, or that either the DNC or Perkins Coie is incorporated or maintains its headquarters or principal place of business in this State. *Id.* at 139 (finding no general jurisdiction where "neither" defendant was "incorporated in [the forum state], nor does either entity have its principal place of business there"); *see also Bovinett v. HomeAdvisor, Inc.*, No. 17 C 6229, 2018 WL 1234963, at *2 (N.D. Ill. Mar. 9, 2018) (Leinenweber, J.) (finding no general jurisdiction where the defendant was "neither headquartered nor incorporated" in Illinois). In fact, Plaintiffs never expressly invoke general jurisdiction over Defendants. Plaintiffs instead assert, seemingly as an afterthought, that just one of the many individuals and entities comprising the Perkins Coie partnership is an Illinois LLC, and that the DNC "has a historical pattern of making its principal place of business in Chicago." Compl. ¶¶

9

24-25. These conclusory allegations are demonstrably false and, in any event, insufficient to establish all-purpose general jurisdiction.

Perkins Coie is an international law firm and limited liability partnership, with partners in no fewer than 12 different states and three different countries. *See* PERKINS COIE, OFFICES, https://www.perkinscoie.com/en/offices/index.html (last visited March 16, 2020); Compl. ¶ 15.[4] Perkins Coie's Chicago office is just one of its over 20 offices world-wide and houses, according to Plaintiffs, less than 15% of the firm's attorneys. *See id.* Similarly, Perkins Coie LLC, which Plaintiffs incorrectly characterize as an "Illinois LLC," is one of nearly a dozen professional corporations that, together with Perkins Coie's individual partners, comprise the Perkins Coie partnership. Although registered to do business in Illinois, Perkins Coie LLC was formed in Delaware (making it a *Delaware* LLC), and its sole manager is a D.C. resident. *See* Ex. 1, Illinois Secretary of State, Certificate of Good Standing for Perkins Coie LLC (Feb. 4, 2020).[5]

Regardless, the mere fact that a single constituent partner of Perkins Coie LLP may have Illinois ties is plainly insufficient to establish general jurisdiction over the entire *Perkins Coie LLP entity*—the party named as a defendant in this case. *See Mizrachi v. Ordower*, No. 17 C 8036, 2019 WL 918478, at *2 (N.D. Ill. Feb. 25, 2019) (applying *Goodyear*'s "at home" test to determine whether the court had personal jurisdiction over a law firm organized as a limited liability partnership); *see also Duncanson v. Wine & Canvas IP Holdings LLC*, No. 1:16-cv-00788, 2017 WL 6994541, at *4 & n.3 (S.D. Ind. Apr. 20, 2017) (finding that limited liability companies are

---

[4]    "The Seventh Circuit has taken judicial notice of information presented on reliable websites." *Incandela v. Great-West Life & Annuity Ins. Co.*, No. 07-cv-7051, 2010 WL 438365, at *5 (N.D. Ill. Feb. 4, 2010).

[5]    *See Suarez v. Kwoks Int'l Trading, Inc.*, No. 05 C 6979, 2007 WL 2874216, at *3 n.3 (N.D. Ill. Sept. 25, 2007) (taking judicial notice of a Certificate of Good Standing issued by the Illinois Secretary of State).

"at home" in their state of formation or principal place of business, notwithstanding the domicile of their individual members); *Carruth v. Michot*, No. A-15-CA-189-SS, 2015 WL 6506550, at *7 (W.D. Tex. Oct. 26, 2015) (rejecting plaintiff's contention that general jurisdiction over defendants turned on the citizenship of their members). The "at home" test of *Goodyear* and *Daimler* applies with equal force to limited liability partnerships. *See Mizrachi*, 2019 WL 918478, at *2. And when considered in the context of the firm's total number of offices, partners, and out-of-state business, Perkins Coie's limited in-forum contacts are hardly so exceptional as to approximate physical presence in Illinois and confer general jurisdiction over the firm. *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (finding no general jurisdiction over a defendant that owned over 2000 miles of railroad tracks and employed some 2100 people in the forum state).[6]

Plaintiffs' conclusory assertion that the DNC "has a historical pattern of making its principal place of business in Chicago," Compl. ¶ 25, is similarly unavailing. The DNC is a national committee incorporated and headquartered in Washington, D.C. Even if assumed true, the mere fact that the DNC may conduct some business in a Chicago office and supported former President Obama's presidential campaigns in Illinois plainly does not make the DNC "at home" here. Indeed, if such limited in-forum contacts were sufficient, the DNC would be subject to general jurisdiction in virtually every state in the country where it has operations. And that "exorbitant exercise[] of all-purpose jurisdiction" would stretch far beyond the limits imposed by federal due process. *Daimler*, 571 U.S. at 139 (rejecting exercise of general jurisdiction that would subject the defendant to potential litigation in every state where it conducted significant business).

---

[6]     It also bears emphasizing that Plaintiffs plainly fail to allege any connection between Messrs. Elias and Sussmann and Perkins Coie *LLC*. Nor do Plaintiffs allege any facts that would link the individual defendants to this forum. On the contrary, Plaintiffs acknowledge that Messrs. Elias and Sussmann are domiciled out of state, Compl. ¶ 18, and Page previously averred that both individuals "conduct their business" out of Perkins Coie's Washington, D.C. office, *see* Oklahoma Compl. ¶ 12.

Applying the *Daimler* standard here, there can be no real dispute that any connection Perkins Coie or the DNC has to Illinois is insufficient to fairly regard these entities as "at home" in this State.

## B.    The Court Lacks Specific Jurisdiction

Plaintiffs similarly fail to establish specific jurisdiction with respect to any Defendant.  In defamation and libel cases, "[s]pecific personal jurisdiction is appropriate" only "where (1) the defendant has purposefully directed his activities at the forum state" and "(2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo*, 601 F.3d at 702 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  In other words, "the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction." *Id.*; *see also Advanced Tactical*, 751 F.3d at 801.

Plaintiffs fail to allege that any of Defendants' supposed tortious conduct occurred in Illinois, much less that Defendants *purposefully directed* tortious activity at the State.  Even taking the Complaint at face value, Plaintiffs do not allege that Defendants commissioned the purported "opposition research" within or from Illinois;[7] Plaintiffs do not allege that Defendants or anyone else conducted said research in Illinois; and Plaintiffs do not allege that Defendants or anyone else published their supposed findings in Illinois or through a medium targeting Illinois.  Nor do Plaintiffs allege that any of Defendants' purported sources lived in Illinois, or that any investigative interviews took place in the State.  Indeed, Plaintiffs do not even allege that they suffered an injury in Illinois.  These failures are fatal. *See, e.g.*, *Sunny Handicraft (H.K.) Ltd. v. Edwards*, No. 16 C 4025, 2017 WL 1049842, at *6 (N.D. Ill. Mar. 20, 2017) (dismissing claims for lack of personal

---

[7]    On the contrary, Plaintiffs assert that Messrs. Elias and Sussmann—who work in Washington, D.C. and who reside in the Washington, D.C. metropolitan area—retained Fusion GPS to conduct the alleged opposition research.  Compl. ¶ 39.

jurisdiction because "[n]owhere in Plaintiffs' filings do they claim that they felt these injuries in Illinois, much less that Defendants had knowledge that Plaintiffs would be injured in Illinois as a result of Defendants' conduct"); *Bovinett*, 2018 WL 1234963, at *2 (finding that plaintiff's failure to connect the defendant's in-forum business activities to the events giving rise to the alleged injury "doom[ed]" plaintiff's specific jurisdiction theory).

At most, Plaintiffs offer the vague and conclusory allegation that Defendants somehow "orchestrated" their relationship with Fusion GPS—a D.C.-based firm—through Perkins Coie's Chicago office. Compl. ¶ 20. That assertion is especially incredible given Plaintiffs' failure to identify a single Chicago-based Perkins Coie attorney in this or any of Page's prior suits. In fact, the only example Plaintiffs can conjure in support of their generic allegation pertains to conduct by an unidentified person that occurred *after* the supposed opposition research was first commissioned, conducted, and published. *See* Compl. ¶¶ 20-21 (describing an October 2017 decision by an unidentified attorney in Perkins Coie's Chicago office to publicly disclose the firm's relationship with Fusion GPS). Plaintiffs' attempt to impute such significance to a single in-forum contact unrelated to—and indeed, postdating—the facts animating their claims is transparent and unavailing.

Plaintiffs plainly fail to establish the propriety of specific jurisdiction here. Even if assumed true, Plaintiffs' allegations about the supposed genesis of Defendants' relationship with Fusion GPS and the physical location of select decision-makers on the DNC's legal team fail to clear the necessary hurdle that Defendants directed tortious conduct at Illinois or that Plaintiffs' supposed injury arises out of these activities. To the contrary, Plaintiffs admit that the allegedly aggrieved parties are residents of Oklahoma, and that the alleged conduct underlying Plaintiffs' claims consists entirely of out-of-state activity by out-of-state actors. These allegations—without

much, much more—fail to satisfy the stringent criteria for specific jurisdiction. *See Monco v. Zoltek Corp.*, 342 F. Supp. 3d 829, 835 (N.D. Ill. 2018) (finding no "substantial [forum] connection" when the "alleged tortious statements occurred in Missouri, were made to non-Illinois residents, and focused not on anything specifically having to do with Illinois" (citing *Walden v. Fiore*, 571 U.S. 277, 284, 285 (2014))).

Because Plaintiffs have not alleged facts supporting—and cannot establish—general or specific personal jurisdiction over any of the Defendants, dismissal is required.

## III.  PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR LACK OF VENUE

Even assuming Plaintiffs could establish personal jurisdiction (and they cannot), this action fails for the independent reason that the Northern District of Illinois is not a proper venue in which to try Plaintiffs' claims. "Federal venue rules determine the judicial district in which a suit should be heard from among those districts that have the power to hear the suit." *Hayward v. Taylor Truck Line, Inc.*, No. 15-cv-00866, 2015 WL 5444787, at *3 (N.D. Ill. Sept. 14, 2015) (citing *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 724 (7th Cir. 2013)). Pursuant to 28 U.S.C. § 1391(b), venue is proper only in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events . . . giving rise to the claim occurred . . . or (3) if there is no district in which an action may otherwise be brought as provided [here], any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

The Northern District of Illinois does not meet any of these conditions. As discussed in Section II, *supra*, none of the Defendants resides in Illinois, none of the alleged events animating Plaintiffs'

claims occurred in Illinois, and no Defendant is subject to personal jurisdiction in this State. That deficiency separately mandates dismissal. *See* 28 U.S.C. § 1406(a).[8]

## IV. JURISDICTIONAL INFIRMITIES ASIDE, THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS ON SUBSTANTIVE GROUNDS

While Plaintiffs' jurisdictional and venue infirmities foreclose their claims, Plaintiffs' substantive allegations fare no better. Plaintiffs' claims sound in defamation (Counts I, II, III, Compl. ¶¶ 107-33), false light (Count IV, Compl. ¶¶ 134-37), tortious interference with prospective economic advantage (Count V, Compl. ¶¶ 138-144), and conspiracy (Count VI, Compl. ¶¶ 145-51). All but one of Plaintiffs' six claims are time-barred, and Plaintiffs fail to allege the basic facts to support any of their scattershot theories of liability against Defendants. Plaintiffs' claims accordingly warrant dismissal.[9]

### A. Plaintiffs' Defamation, False Light, And Conspiracy Claims Are Time-Barred

Notwithstanding Page's obvious forum shopping, even under Illinois law, claims for defamation or false light are still governed by a one-year statute of limitations, running from the time of the allegedly offending publication.[10] 735 ILCS 5/13-201; *see also Muzikowski v.*

---

[8] Courts are required to dismiss a case "laying venue in the wrong division or district." 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district *shall* dismiss . . . .") (emphasis added). The lone exception to this mandate is when the court can identify a proper venue in which to try the case and transfer is in the interest of justice. *Id.* That narrow exception is inapplicable here. As set forth in greater detail *infra*, Plaintiffs' claims are time barred, and given the plain language of Section 1391(b), Plaintiffs had no reasonable basis for filing in this venue. Transferring a twice-dismissed, fatally deficient action would only further drain judicial resources and unduly burden Defendants. Given the unique facts of this case and Plaintiffs' numerous failed attempts at pleading a viable action, dismissal is the only appropriate remedy.

[9] Absent a conflict of law, the law of the forum state applies. *See Bd. of Forensic Document Exam'rs, Inc. v. Am. Bar Ass'n*, 922 F.3d 827, 831 (7th Cir. 2019). As Plaintiffs do not allege any such conflict exists here, we address the deficiencies of Plaintiffs' claims under the laws of Illinois.

[10] Plaintiffs' claim for false light stems from the same alleged publication of defamatory statements that form the basis for Plaintiffs' claims for defamation. *See* Compl. ¶¶ 134-37. Plaintiffs' allegations in support of the two categories of claims are identical and the analysis under Illinois law is, therefore, the same. *See* 735 ILCS 5/13-201 ("Actions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued."); *see also Lovgren v.*

*Paramount Pictures Corp.*, 322 F.3d 918, 923 (7th Cir. 2003) ("Illinois imposes a one-year statute of limitations on all defamation actions that begins to run when the defamatory statement was published."); *Hinton v. Vonch, LLC*, No. 18 CV 7221, 2019 WL 3554273, at *3 (N.D. Ill. Aug. 2, 2019) ("An action for false light is also governed by a one-year statute of limitations."). "Although the statute of limitations is an affirmative defense, a court may dismiss a claim as time-barred if the complaint sets forth the necessary information to show that the statute of limitations has expired." *Stoller v. Costco Wholesale Corp.*, No. 19-cv-140, 2020 WL 247459, at *4 (N.D. Ill. Jan. 16, 2020); *see also Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018).

Crediting all allegations in their Complaint, Plaintiffs fail to identify a single statement published by any Defendant within one year of the date on which this lawsuit—or, for that matter, the prior Oklahoma action—was filed. Plaintiffs assert that the limitations period should run against the Oklahoma case filed on October 15, 2018. Compl. ¶¶ 104-05; *see also* 735 ILCS 5/13-217. Accepting this assertion,[11] Plaintiffs expressly allege that Defendants' defamatory statements were originally made on July 19, 2016 and republished, at latest, in September 2016. Compl. ¶¶ 48, 57. Accordingly, even Page's Oklahoma Complaint was stale by over a year when filed. *See Emery v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 377 Ill. App. 3d 1013, 1022 (1st Dist. 2007) (noting that "publication" occurs when the statements "were communicated to someone other than plaintiff").

---

*Citizens First Nat'l Bank of Princeton*, 126 Ill. 2d 411, 421 (1989) ("There is an overlapping of protected interests in the false-light privacy tort and those protected by defamation law.").

[11]    735 ILCS 5/13-217 is inapplicable to Plaintiffs' present action because the Complaint constitutes a second refiling of the Oath Complaint. *See Watkins v. Ingalls Mem'l Hosp.*, 105 N.E.3d 789, 807 (Ill. App. Ct. 1st Dist. 2018) (holding that 735 ILCS 5/13-217 does not apply to a second refiling of a claim). Even if § 13-217 applied here, it cannot revive Plaintiffs' defamation and false light claims, which were already time-barred when the Oklahoma Complaint was filed.

Plaintiffs do not allege any more recent statements upon which a claim could be predicated. Instead, Plaintiffs identify two purported republications addressing the Steele Dossier from Yahoo! News and BuzzFeed in September 2016 and January 2017, respectively. Compl. ¶ 60; *see also* Oklahoma Compl. ¶ 31.[12] Any alleged publication therefore occurred over eighteen months prior to the filing of the Oklahoma Complaint, and over three years prior to the filing of this Complaint— well outside the one-year limitations period for defamation and false light claims.

The same holds for Plaintiffs' related conspiracy claim. Illinois courts "that have addressed the appropriate statute of limitations for a conspiracy to defame action have applied the one-year statute of limitations for defamation." *Mauvais-Jarvis v. Wong*, 987 N.E.2d 864, 895 (Ill. App. Ct. 1st Dist. 2013). Accordingly, "[a] claim alleging civil conspiracy is . . . time-barred if the substantive tort underlying it was time-barred." *Id.* at 894. Here, because Plaintiffs' defamation and false light claims are time-barred, their conspiracy claim also fails. *See Weber v. Cueto*, 253 Ill. App. 3d 509, 521-22 (5th Dist. 1993) (upholding dismissal of civil conspiracy claim where one-year statute of limitations had expired on the underlying, allegedly defamatory statements).

Finally, it bears noting that the narrow "discovery rule" exception is inapposite here and in no way excuses Plaintiffs' belated filing. That rule "delays the start of the limitations period until the claimant knew or reasonably should have known of the injury and that the injury was wrongfully caused." *Am. Family Mut. Ins. Co. v. Krop*, 120 N.E.3d 982, 987-88 (Ill. 2018). But Illinois courts have made clear that the discovery rule does not apply in defamation cases "unless the publication was hidden, inherently undiscoverable, or inherently unknowable." *Fleming v. Chicago Sch. of Prof'l Psychology*, No. 15 C 9036, 2017 WL 4310536, at *7 (N.D. Ill. Sept. 28,

---

[12] The manner in which Plaintiffs chose to plead this claim is also improperly opaque. *See Mitchell v. Plano Police Dep't*, No. 16-cv-07227, 2017 WL 4340118, at *6 (N.D. Ill. Sept. 29, 2017) (dismissing claim for defamation where it was "not clear whether [plaintiff] [was] alleging that Defendants published this information or [were] just stating that someone published it").

2017) (citing *Blair v. Nevada Landing P'ship*, 369 Ill. App. 3d 318, 326 (2d Dist. 2006)); *see also*

*Carroll v. Gibbar*, 2019 IL App (4th) 180418-U, ¶ 14 ("[D]efamation via mass-media publications,

including magazines, books, newspapers, radio and television programs are not subject to the

discovery rule because they are readily accessible to the general public." (citing *Tom Olesker's*

*Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill. 2d, 137-38 (1975))).  As Page's

multiple prior lawsuits based on the Yahoo and BuzzFeed Articles confirm, he has been on notice

of the claims asserted for years.  So this lawsuit comes too late.

### B.      Plaintiffs Fail To Plausibly Allege Defamation

Plaintiffs' defamation claims also fail on the merits.  To state a claim for defamation in

Illinois, a plaintiff must allege (1) "that the defendant made a false statement about the plaintiff,"

(2) "that the defendant made an unprivileged publication of that statement to a third party," and

(3) "that this publication caused damages." *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009).  Where

the party claiming defamation is a "public figure" or "limited public figure," he is subject to a

stricter pleading standard and must also allege that the defamatory statements were made with

"actual malice." *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 394

(2008).  But where a plaintiff relies on bald allegations or conclusory recitations of these elements,

his claims fail. *See Gatto v. Indian Prairie Sch. Dist. 204*, No. 11 C 6405, 2012 WL 1030523, at

*3 (N.D. Ill. Mar. 26, 2012) (applying *Iqbal* to analysis of defamation claim), *aff'd*, 508 F. App'x

554 (7th Cir. 2013).  That prohibition dooms Plaintiffs' claims here.

As a threshold matter, Plaintiffs fail to allege any defamatory statements specific to Global

Energy or Global Natural Gas.  Alleging "a false statement *about the plaintiff*" is a necessary

component of any defamation claim in Illinois. *Rogers*, 234 Ill. 2d at 491 (emphasis added); *see*

*also Huon v. Breaking Media, LLC*, 75 F. Supp. 3d 747, 762 (N.D. Ill. 2014) ("Statements that are

not about the plaintiff also are not actionable as defamation.") (citing *BASF AG v. Great Am.*

*Assurance Co.*, 522 F.3d 813, 820 (7th Cir. 2008)), *rev'd on other grounds sub nom. Huon v. Denton*, 841 F.3d 733 (7th Cir. 2016); *Mitchell*, 2017 WL 4340118, at *6 (dismissing defamation claim because plaintiff "fail[ed] to coherently allege publication by the Defendants"). While the Complaint alleges that "four categories of defamatory statements *were made against Dr. Page*," it does not specify any statements directed towards Global Energy or Global Natural Gas. Compl. ¶ 69, *see also id.* ¶¶ 52-78. Accordingly, the omission of any alleged defamatory statements in the Complaint regarding either Global Energy or Global Natural Gas renders Counts II and III of the Complaint deficient on their face.

The gravamen of Plaintiffs' defamation claims, instead, rests entirely on statements made about Page. But Page's claim also fails for three reasons: (1) the allegedly defamatory statements were substantially true; (2) the allegedly defamatory statements are capable of an innocent construction; and (3) Plaintiffs fail to adequately allege actual malice. Each of these deficiencies, independently, is grounds for dismissal.

### 1. *The Allegedly Defamatory Statements Are Substantially True*

*First*, the statements regarding Page are not actionable because they are "substantially true." *Rivera v. Lake Cty.*, 974 F. Supp. 2d 1179, 1192 (N.D. Ill. 2013) (Leinenweber, J.) ("Only 'substantial truth' is required for [the defense of truth], which under Illinois law may be raised in a motion to dismiss.") (internal citation omitted). The Complaint laments the purported "falsity" of Defendants' statements, Compl. ¶ 113, but under Illinois law, "an allegedly defamatory statement is not actionable if it is substantially true, even though it is not technically accurate in every detail," *Parker v. House O'Lite Corp.*, 324 Ill. App. 3d 1014, 1026 (1st Dist. 2001). Illinois courts deem a statement substantially true "[w]here the plaintiff's own characterization is not substantially different from the allegedly defamatory language." *Harrison v. Chicago Sun-Times, Inc.*, 341 Ill. App. 3d 555, 563 (1st Dist. 2003) (noting a court need not determine a statement is

"technically accurate in every detail" to apply the substantial truth principle). Courts therefore dismiss defamation claims at the pleading stage where a defendant shows that "the gist or sting of the allegedly defamatory material is true." *Id.* (internal quotation marks omitted).

Here, the "gist" of the complained-of statements—that Page coordinated with Russian government contacts as an adviser to the Trump campaign—aligns with Page's own description of his conduct. While the Complaint now asserts that reports of Page's meetings with Russian officials are "baseless," Compl. ¶ 64, Page's prior pleadings and public statements suggest otherwise. *See Watkins v. United States*, 854 F.3d 947, 950 (7th Cir. 2017) (affirming district court's decision to take "judicial notice of the state court complaint . . . which contained the same essential allegations as the present suit"); *see also Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) (discussing the scope of incorporation by reference). The Oklahoma Complaint explicitly alleges that Page had significant business and political ties to Russia. *See* Okla. Compl. ¶¶ 7, 46, 78-80 (describing Page's business interests "as a trusted advisor and partner" with Russian-based international energy companies and his trips to Russia as a "scholar in foreign policy"). Page publicly admitted to these affiliations, including during several of the very reports he cited in the Oklahoma Complaint. *See id.* ¶ 39 nn.101, 103.[13] Consequently, Page's own allegations demonstrate the substantial truth of statements that Page traveled to Russia and met with associates of the Russian government. *See* Compl. ¶ 57. Plaintiffs' defamation claims should be dismissed based on that basis alone.

---

[13] Page also admitted to meeting with Russian politicians and ambassadors on other occasions in the interviews cited in the Oklahoma Complaint's footnotes. *See* MSNBC, "Carter Page: 'I don't deny' meeting with Russian Ambassador" at 4:30 (Mar. 2, 2017), available at https://www.msnbc.com/all-in/watch/carter-page-i-don-t-deny-meeting-with-russian-ambassador-889043011736?v=railb& ("I'm not going to deny that I talked with [Sergey Kislyak]"); ABC NEWS, "Former associate denies being Trump-Russia middleman" at 1:54 (Feb. 2, 2017), available at https://abcnews.go.com/US/video/associate-denies-trump-russia-middle-man-45216480 (admitting that Page had "been in various presentations by [Sechin]").

The Complaint also fails to allege that the complained-of statements are necessarily defamatory. The innocent construction rule is well established in Illinois, such that an allegedly defamatory statement "will not be actionable . . . if it is reasonably capable of an innocent construction." *Kapotas v. Better Gov't Ass'n*, 30 N.E.3d 572, 591 (Ill. App. Ct. 5th Dist. 2015); *see also John v. Tribune Co.*, 24 Ill. 2d 437, 442 (1962) (holding allegedly defamatory language that is "capable of being read innocently must be so read and declared nonactionable as a matter of law"). Courts should not interpret a statement in isolation, and instead must consider the entire context of an article or report. *Kapotas*, 30 N.E.3d at 592 (finding the headline "Cook County Doc Gets Big Payout For No Work" was reasonably capable of an innocent interpretation when considered in the context of the article). "Whether a statement is reasonably susceptible to an innocent interpretation is a question of law." *Id.* (quoting *Bryson v. News Am. Publ'ns, Inc.*, 174 Ill. 2d 77, 90 (1996)).

The statements at issue in this case are not merely *susceptible* of an innocent construction—they relate to business and political contacts that Page himself undisputedly cultivated in Russia. *See* Compl. ¶ 62. For example, statements that "Page had reacted positively to [a] demarche by Sechin," *id.* ¶ 48, were not facially damaging, but rather reflected Page's own pursuit of Russian governmental contacts, *see supra*, at 4. In a 2017 television interview cited in Page's Oklahoma Complaint,[14] for example, Page remarked that "it would have been an honor to meet Igor Ivanovich [Sechin]," and explained that he had "been in various presentations by [Sechin]." ABC NEWS,

---

[14]    Again, this Court should take judicial notice of the allegations in the Oklahoma Complaint and the reports and articles referenced therein. *See Phillips*, 714 F.3d at 1019-20 ("In conducting our review, we must consider not only the complaint itself, but also documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice."); *see also Watkins*, 854 F.3d at 950.

"Former associate denies being Trump-Russia middleman" at 1:54 (Feb. 2, 2017), *available at* https://abcnews.go.com/US/video/associate-denies-trump-russia-middle-man-45216480. Far from viewing reports of his Russian contacts as embarrassing or defamatory, Page believed they were an "honor" that he actively worked to develop. *Id.* Consequently, Defendants' statements are reasonably susceptible of an innocent—even positive—construction.

### 3. *Plaintiffs Fail To Allege Actual Malice*

*Finally*, the Complaint fails to plausibly plead that any Defendant acted with "actual malice" when making statements about Page—a public figure. Whether a plaintiff is a public figure "is a question of federal constitutional law"; however, state law may supply a more expansive, supplemental definition. *Harris v. Quadracci*, 48 F.3d 247, 250 n.5 (7th Cir. 1995). A public figure is one who either (1) achieves such personal fame and notoriety that he becomes a public figure for all purposes; or (2) voluntarily becomes involved in or is drawn into a public controversy and thereby becomes a public figure with respect to that controversy (i.e., a "limited purpose" public figure). *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). In Illinois, an otherwise private person constitutes a limited-purpose public figure if (1) the relevant controversy is a "public controversy"; (2) the plaintiff has "undertaken some voluntary act seeking to influence the resolution of the issues involved" in the public controversy; and (3) the defamatory statement is "germane to the plaintiff's participation in the controversy." *Jacobson v. CBS Broad.*, 19 N.E.3d 1165, 1176-77 (Ill. App. Ct. 1st Dist. 2014).

Page—who volunteered as a foreign policy advisor to a presidential candidate, was publicly identified by then-candidate Trump as an advisor, and gave public speeches regarding Russian policy—is undoubtedly a public figure or, at least, a limited public figure as it relates to the statements at issue in this case. District courts analyzing similar individuals, particularly in the context of political campaigns, have routinely found as much. *See, e.g.*, *Jankovic v. Int'l Crisis*

*Grp.*, 822 F.3d 576, 587 (D.C. Cir. 2016) (a plaintiff who "was an outspoken supporter, financial backer, and advisor of" the Prime Minister of Serbia was a public figure), *cert. denied*, 137 S. Ct. 1434 (2017); *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 142 (D.D.C. 2017) (granting motion to dismiss and finding Deripaska—a Russian oligarch—to be a limited-purpose public figure given his relationship with the Trump campaign).

Because Page is a public or limited-purpose public figure, the Complaint must "plead specific facts" supporting an inference that Defendants made false statements with "actual malice." *Lee v. Radulovic*, No. 94 C 930, 1994 WL 502844, at *2 (N.D. Ill. Sept. 13, 1994) (dismissing complaint based on conclusory assertions that statements "were false and known to be false when made"); *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). Conclusory allegations that statements were known to be false or published "maliciously" are insufficient. *Coghlan v. Beck*, 984 N.E.2d 132, 150 (Ill. App. Ct. 1st Dist. 2013) (rejecting "bare conclusory allegation that [defendant] republished the letter 'maliciously' and 'knowing that the statements in the IBM letter were false.'"); *Arpaio v. Cottle*, 404 F. Supp. 3d 80, 84 (D.D.C. 2019) (dismissing complaint that did "no more than recite the applicable legal standard").[15]

Plaintiffs' Complaint is rife with conclusory allegations merely parroting the pleading standard. For example, Plaintiffs baldly allege Defendants disseminated statements about Page "with knowledge that they were false or with reckless disregard of whether they were false or not." Compl. ¶ 79. But the Complaint is devoid of facts—let alone "specific facts"—substantiating those broad-brushed accusations. Plaintiffs' defamation claims must be dismissed as a result.

---

[15]    In *Arpaio*, for example, the plaintiff merely "allege[d] that the Article's 'factual assertions [were] carefully and maliciously calculated to damage and injure Plaintiff Arpaio both in the law enforcement community . . . as well as with Republican establishment and donors." 404 F. Supp. 3d at 84.

### C. Plaintiffs Fail To Plausibly Allege False Light

Plaintiffs' related false light claim fails as well. *See* Compl. ¶¶ 134-37. A claim for false light publicity requires a plaintiff to plead that (1) he was "placed in a false light before the public as a result of the defendants' actions," (2) that false light "would be highly offensive to a reasonable person," and (3) the defendant "acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false." *Ludlow v. Northwestern Univ.*, 79 F. Supp. 3d 824, 837 (N.D. Ill. 2015) (quoting *Kirchner v. Greene*, 294 Ill. App. 3d 672, 682 (1st Dist. 1998)). Illinois courts typically dispose of defamation claims and false light claims in unison. *See Lovgren*, 126 Ill. 2d at 421 ("There is an overlapping of protected interests in the false-light privacy tort and those protected by defamation law."); *Bd. of Forensic Document Exam'rs, Inc. v. Am. Bar Ass'n*, 287 F. Supp. 3d 726, 738 (N.D. Ill. 2018) ("The false light invasion of privacy claims also fail for the same reason as the defamation claims."). And that is exactly the right outcome here.

*First*, Defendants did not place Plaintiffs in a "false light," because their statements about Page's Russian contacts were "substantially true." *See supra* at 19-20; *see also Mouloki v. Epee*, No. 14 C 5532, 2016 WL 910496, at *2 (N.D. Ill. Mar. 10, 2016) ("[T]he publication was substantially true and therefore the counterclaim fails to state a claim for false light."). *Second*, far from being defamed by the so-called falsehoods, Page lauded his ties to Russia and the opportunity to meet high-ranking Russian officials. *See supra* at 21-22; *Kapotas*, 30 N.E.3d at 595 (affirming dismissal of false light claim where the "plaintiff failed to identify false statements in the articles published by the defendants"). *Finally*, Plaintiffs have not pled sufficient facts to show that Defendants acted with "actual malice," *i.e.*, that they possessed "knowledge that the statements were false or [acted] with reckless disregard for whether the statements were true or

false."[16] *Ludlow*, 79 F. Supp. 3d at 837; *see also supra* at 22-23.  These are fatal flaws to any false light claim, and this Court should dismiss Plaintiffs' claim accordingly.

### D.  Plaintiffs Fail To Plausibly Allege Conspiracy

Plaintiffs also assert a civil conspiracy claim predicated upon Defendants' supposed agreement to defame Plaintiffs and cast Plaintiffs in a "false light."  Compl. ¶¶ 145-51.  A plaintiff must adequately allege an underlying tort in order to allege conspiracy, and dismissal of the underlying tort requires dismissal of the conspiracy claim.  *See Wong*, 987 N.E.2d at 894 ("It is well-settled that conspiracy, standing alone, is not a separate and distinct tort in Illinois."); *Lee v. Radulovic*, No. 94 C 930, 1994 WL 384010, at *7 (N.D. Ill. July 20, 1994) ("Since the underlying defamation claim has been dismissed, [the conspiracy] count also fails.").  Here, because Plaintiffs' defamation and false light claims fail, *see supra* at 18-25, their conspiracy claim also fails as a matter of law.

In any event, even if Plaintiffs' underlying tort claims were viable (and they are not), the Complaint fails to allege a plausible agreement as required to plead civil conspiracy.  "To state a claim for civil conspiracy, a plaintiff must allege facts establishing both (1) an agreement to accomplish such a goal and (2) a tortious act committed in furtherance of that agreement."  *Reuter v. MasterCard Int'l, Inc.*, 397 Ill. App. 3d 915, 927 (5th Dist. 2010); *see also Bd. of Forensic Document Exam'rs*, 287 F. Supp. 3d at 739.  An allegation that "merely characterize[es] a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss."  *Reuter*, 397 Ill. App. 3d at 928.  Here, Plaintiffs make only conclusory allegations about the purported relationship between Defendants and "their agents Fusion GPS and Steele," and include vague

---

[16]  Plaintiffs are required to plead "actual malice" to state a claim for false light, irrespective of whether Page is a "public figure."  *See Lovgren*, 126 Ill. 2d at 422 ("[I]n false-light cases it is not necessary to distinguish between private and public figures.").

references to interactions with "law enforcement officials." Compl. ¶¶ 97, 147 (summarily alleging that Defendants "knowingly provided false information to law enforcement agencies"); *see also id.* ¶ 146 ("Defendants agreed to participate in defaming Plaintiffs and agreed to participate in placing Plaintiffs in a false light."). These unadorned assertions are devoid of "specific details demonstrating the existence of an actual conspiracy"—including when, where, or how any supposed agreement was formed. *Sterling Fed. Bank, FSB v. Credit Suisse First Boston Corp.*, No. 07-C-2922, 2008 WL 4924926, at *9 (N.D. Ill. Nov. 14, 2008). Plaintiffs' conspiracy claim thus fails on substantive grounds as well.

### E. Plaintiffs Fail To Allege Tortious Interference with Prospective Economic Advantage

Plaintiffs' tortious interference claim fares no better. To allege tortious interference with prospective economic advantage in Illinois, Plaintiffs must allege "(1) Plaintiff[s'] reasonable expectancy of entering into a valid business relationship; (2) Defendants' knowledge of that expectancy; (3) Defendants' intentional and unjustifiable interference that induced or cause[d] a breach or termination of the expectancy; and (4) damages." *Simons v. Ditto Trade, Inc.*, 63 F. Supp. 3d 874, 881 (N.D. Ill. 2014) (citing *F:AJ Kikson v. Underwriters Labs, Inc.*, 492 F.3d 794, 800 (7th Cir. 2007)). As courts have explained, "the element of interference requires more than mere allegations of conduct between the plaintiff and defendant. Rather, a plaintiff must assert that there has been interference as a result of conduct *directed by the defendant toward a third party*." *Premier Transp. Ltd. v. Nextel Commc'ns, Inc.*, No. 02 C 4536, 2002 WL 31507167, at *2 (N.D. Ill. Nov. 12, 2002) (emphasis added); *see also OnTap Premium Quality Waters, Inc. v. Bank of N. Ill.*, 262 Ill. App. 3d 254, 263 (2d Dist. 1994) (affirming dismissal of tortious interference claim due to absence of allegations "to support the requirement that plaintiff allege[d] interference directed toward a third party"). Plaintiffs have not alleged facts sufficient to establish

either (1) that they had a reasonable expectation of a business relationship or (2) that Defendants directed any action whatsoever toward a third party.

Plaintiffs offer vague descriptions of purported financial relationships with a laundry list of energy companies and financial institutions, Compl. ¶¶ 95-99, but provide no concrete facts to support a "reasonable expectancy of entering into a valid business relationship," *Simons*, 63 F. Supp. 3d at 881; Compl. ¶ 139. Illinois courts require more than a "hope" or "opportunity" of future business—a plaintiff must provide specific facts to substantiate a reasonable expectation. *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 406-07 (1996) (dismissing tortious interference claim due to lack of reasonable business expectancy in employment despite plaintiff receiving assurances that her interviews went well and were progressing past the initial stages); *Kiebala v. Boris*, No. 1:16 CV 7478, 2017 WL 4339947, at *4 (N.D. Ill. Sept. 29, 2017) (granting motion to dismiss because the plaintiff had not demonstrated an expectation of success in obtaining business opportunities despite describing the specific opportunity). Plaintiffs cannot point to *any* prior interactions—including a single conversation, relationship, or investment—with *any* of the fifteen entities described in the Complaint. Instead, Plaintiffs merely proffer summarily that they "had the opportunity to enter into business relationships with all the foregoing companies—and a reasonable expectancy of entering those relationships." Compl. ¶ 139. Without facts demonstrating that Plaintiffs reasonably expected particular business in the future, Plaintiffs' tortious interference claim cannot stand. *See Anderson*, 172 Ill. 2d at 406-07.

Equally fatal is Plaintiffs' failure to allege—in even a conclusory fashion—that Defendants' actions *were directed toward a third party*. As explained above, Plaintiffs list fifteen purported "relationships" that Defendants supposedly interfered with; yet Plaintiffs provide no facts detailing how Defendants supposedly interfered intentionally with these purported

relationships or, for that matter, were even aware of them. Compl. ¶ 139. Plaintiffs' tortious interference claim thus boils down to two alleged prospective business opportunities: (1) advising Samruk-Kazyna in a strategic privatization plan; and (2) establishing a global commodity trading company based on a relationship with the Dubai Mercantile Exchange. *See* Compl. ¶¶ 95-99.

Plaintiffs allege that Defendants "knew the effect that the Defamatory Statements would have on these and other of Plaintiffs' prospective business opportunities" and that "Fusion GPS searched Plaintiffs [sic] business records and other databases." *Id.* ¶¶ 100, 140. But even if these conclusory statements warranted a presumption of truth, mere awareness of a prospective relationship is not enough. *See Grund v. Donegan*, 298 Ill. App. 3d 1034, 1039 (1st Dist. 1998). Rather, Plaintiffs were required—but failed—to allege that Defendants *directed* specific actions or statements towards third parties. *See* Compl. ¶¶ 95-99. Without alleging any statement, communication, or action whatsoever directed towards Samruk-Kazyna or the Dubai Mercantile Exchange, Plaintiffs fail to state a tortious interference claim, and Count V should be dismissed accordingly. *Grund*, 298 Ill. App. 3d at 1039 (dismissing tortious interference claim for failure to allege facts in support of the allegation that statements were directed toward a third party).

## V.      THE COURT SHOULD DENY PLAINTIFFS LEAVE TO AMEND

Should the Court dismiss this action on the merits, rather than based on the Complaint's numerous procedural defects, such dismissal should be with prejudice. Federal Rule of Civil Procedure 15(a)(2) instructs that leave to amend should be given only where justice requires. "The right to amend a complaint is not absolute. An amendment is inappropriate when there is "undue delay . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *In re Ameritech Corp.*, 188 F.R.D. 280, 282-83 (N.D. Ill. 1999) (internal citations omitted). This

case is—in all material respects—Plaintiffs' third bite at the proverbial apple. At each turn, Page's pleadings have been rife with procedural and substantive defects that mandate dismissal. Here too, where Plaintiffs fail to establish personal jurisdiction, file in an improper venue, and advance plainly time-barred causes of action, there is no reason to believe that dragging out this lawsuit will yield a colorable claim—much less "justice"—of any kind. Defendants respectfully request that the Court dismiss the Complaint with prejudice.

## VI. CONCLUSION

For the reasons set forth above, Plaintiffs' Complaint should be dismissed in its entirety, with prejudice.

Dated: March 16, 2020

Respectfully submitted,

/s/ Terra Reynolds
Terra Reynolds (Bar No. 6278858)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
terra.reynolds@lw.com

Kathryn Ruemmler (*pro hac vice*)
Stephen P. Barry (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
kathryn.ruemmler@lw.com
stephen.barry@lw.com

Nicholas L. McQuaid (*pro hac vice*)
Matthew S. Salerno (*pro hac vice*)
LATHAM & WATKINS LLP
885 Third Avenue,
New York, N.Y. 10022

Telephone: (212) 906-1200
nicholas.mcquaid@lw.com
matthew.salerno@lw.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel registered for ECF.

/s/ Terra Reynolds_____
Terra Reynolds (Bar No. 6278858)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
terra.reynolds@lw.com

*Counsel for Defendants*