**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CARTER PAGE, et al., | |
| Plaintiffs, | |
| v. | Case No. 1:20-CV-00671 |
| DEMOCRATIC NATIONAL COMMITTEE; DNC SERVICES CORPORATION; PERKINS COIE LLP; MARC ELIAS; AND MICHAEL SUSSMANN, | Hon. Harry D. Leinenweber |
| Defendants. | |

**REPLY IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS COMPLAINT**
**UNDER RULES 12(b)(2), 12(b)(3), AND 12(b)(6)**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

I.      PLAINTIFFS FAIL TO ESTABLISH PERSONAL JURISDICTION..............................2

    A.      Plaintiffs Cannot Establish That Any Defendant Is "At Home" In Illinois.............2

    B.      Plaintiffs Fail To Establish Specific Jurisdiction.....................................................6

    C.      Plaintiffs Concede There Is No Jurisdiction Over The Individual
           Defendants .................................................................................................................8

    D.      Plaintiffs Are Not Entitled To Jurisdictional Discovery..........................................8

II.     PLAINTIFFS FAIL TO ESTABLISH THAT VENUE IS PROPER.................................9

III.    PLAINTIFFS FAIL TO STATE A VIABLE CAUSE OF ACTION...............................10

    A.      Plaintiffs' Defamation And False Light Claims Are Time-Barred.......................10

          **1.**      Plaintiffs' Time-Barred Claims Do Not Merit Equitable Tolling Or
                  Estoppel.....................................................................................................11

          **2.**      The Illinois Savings Statute Does Not Apply To This Action...................13

    B.      Plaintiffs' Defamation And False Light Claims Also Fail On The Merits............14

    C.      Plaintiffs Have Not Pled Tortious Interference .....................................................17

    D.      Plaintiffs Have Not Pled Conspiracy ....................................................................18

IV.    DISMISSAL WITH PREJUDICE IS APPROPRIATE ..................................................19

CONCLUSION..................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Al Haj v. Pfizer Inc.*,
    338 F. Supp. 3d 741 (N.D. Ill. 2018) .......................................................................5

*Am. Family Mut. Ins. Co. v. Plunkett*,
    14 N.E.3d 676 (Ill. App. Ct. 1st Dist. 2014) ..........................................................11

*Ashafa v. City of Chicago*,
    146 F.3d 459 (7th Cir. 1998) ..................................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................16

*Bell v. Taylor*,
    2013 WL 12291882 (S.D. Ind. May 3, 2013) ..........................................................4

*Bhatia v. Vaswani*,
    2020 WL 3578004 (N.D. Ill. July 1, 2020) ............................................................13

*Blaum v. Triad Isotopes, Inc.*,
    104 F. Supp. 3d 901 (N.D. Ill. 2015) .....................................................................17

*BNSF Ry. Co. v. Tyrrell*,
    137 S. Ct. 1549 (2017) ..............................................................................................3

*Bovinett v. HomeAdvisor, Inc.*,
    2018 WL 1234963 (N.D. Ill. Mar. 9, 2018) ............................................................6

*Bryson v. News Am. Publ'ns, Inc.*,
    174 Ill. 2d 77 (1996) ..............................................................................................14

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ..................................................................................................7

*Cada v. Baxter Healthcare Corp.*,
    920 F.2d 446 (7th Cir. 1990) ..................................................................................11

*Calloway v. AT&T Corp.*,
    2019 WL 4694724 (N.D. Ill. Sept. 26, 2019) ..........................................................9

*Car Carriers, Inc. v. Ford Motor Co.*,
    745 F.2d 1101 (7th Cir. 1984) ................................................................................16

*Castello v. Kalis,*
　352 Ill. App. 3d 736 (1st Dist. 2004) ......................................................................11

*Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.,*
　440 F.3d 870 (7th Cir. 2006) ....................................................................................5

*Coghlan v. Beck,*
　984 N.E.2d 132 (Ill. App. Ct. 1st Dist. 2013) ........................................................16

*Connor v. JP Morgan Chase Bank, N.A.,*
　2016 WL 7201189 (N.D. Ill. Mar. 22, 2016) .........................................................11

*Daimler AG v. Bauman,*
　571 U.S. 117 (2014) ...........................................................................................3, 4, 5

*Deripaska v. Associated Press,*
　282 F. Supp. 3d 133 (D.D.C. 2017) ........................................................................15

*F:A J Kikson v. Underwriters Labs., Inc.,*
　492 F.3d 794 (7th Cir. 2007) ..................................................................................18

*Foster v. Plaut,*
　252 Ill. App. 3d 692 (1st Dist. 1993) ......................................................................13

*Gilman Opco LLC v. Lanman Oil Co.,*
　2014 WL 1284499 (N.D. Ill. Mar. 28, 2014) ...........................................................9

*Gist v. Macon Cty. Sheriff's Dep't,*
　284 Ill. App. 3d 367 (4th Dist. 1996) ......................................................................15

*Goodyear Dunlop Tires Operations S.A. v. Brown,*
　564 U.S. 915 (2011) ..............................................................................................2, 3

*Guar. Tr. Life Ins. Co. v. Kribbs,*
　68 N.E.3d 1046 (Ill. App. Ct. 1st Dist. 2016) ........................................................12

*Haywood v. Massage Envy Franchising, LLC,*
　887 F.3d 329 (7th Cir. 2018) ..................................................................................19

*In re Honey Transshipping Litig.,*
　87 F. Supp. 3d 855 (N.D. Ill. 2015) .........................................................................6

*Hurst v. Capital Cities Media, Inc.,*
　323 Ill. App. 3d 812 (5th Dist. 2001) ......................................................................13

*Hutchinson v. Proxmire,*
　443 U.S. 111 (1979) ................................................................................................16

*Indag GmbH & Co. v. IMA S.P.A.*,
  150 F. Supp. 3d 946 (N.D. Ill. 2015) ....................................................................9

*James Cape & Sons Co. v. PCC Constr. Co.*,
  453 F.3d 396 (7th Cir. 2006) ............................................................................19

*Kiebala v. Boris*,
  2017 WL 4339947 (N.D. Ill. Sept. 29, 2017) ....................................................18

*Levin v. Grecian*,
  974 F. Supp. 2d 1114 (N.D. Ill. 2013) ..............................................................13

*Markarian v. Garoogian*,
  767 F. Supp. 173 (N.D. Ill. 1991) ......................................................................7

*Molina-Garcia v. Fardon*,
  754 F. App'x 475 (7th Cir. 2019) ......................................................................11

*Muzikowski v. Paramount Pictures Corp.*,
  322 F.3d 918 (7th Cir. 2003) ............................................................................14

*Peal v. Lee*,
  403 Ill. App. 3d 197 (1st Dist. 2010) ................................................................11

*Pippen v. NBCUniversal Media, LLC*,
  734 F.3d 610 (7th Cir. 2013) ......................................................................16, 17

*Premier Transp., Ltd. v. Nextel Commc'ns, Inc.*,
  2002 WL 31507167 (N.D. Ill. Nov. 12, 2002) ..................................................18

*Quadro Enters., Inc. v. Avery Dennison Corp.*,
  2000 WL 1029176 (N.D. Ill. July 26, 2000)......................................................17

*Redelmann v. Claire Sprayway, Inc.*,
  375 Ill. App. 3d 912 (1st Dist. 2007) ................................................................19

*Rosado v. Gonzalez*,
  832 F.3d 714 (7th Cir. 2016) ............................................................................12

*Shrum v. Big Lots Stores, Inc.*,
  2014 WL 6888446 (C.D. Ill. Dec. 8, 2014) .....................................................7, 8

*Skibbe v. U.S. Bank Tr.*,
  2017 WL 2506405 (N.D. Ill. June 9, 2017) ......................................................14

*Smith v. Jefferson Cty. Bd. of Educ.*,
  378 F. App'x 582 (7th Cir. 2010) ........................................................................6

*Sunny Handicraft (H.K.) Ltd. v. Edwards*,
  2017 WL 1049842 (N.D. Ill. Mar. 20, 2017)...........................................................6

*In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial
  Proceedings*,
  136 F. Supp. 3d 968 (N.D. Ill. 2015) ....................................................................9

*Timberlake v. Illini Hosp.*,
  175 Ill. 2d 159 (1997) .........................................................................................13

*United Phosphorus Ltd. v. Angus Chem. Co.*,
  43 F. Supp. 2d 904 (N.D. Ill. 1999) ......................................................................7

*Wild v. Subscription Plus, Inc.*,
  292 F.3d 526 (7th Cir. 2002) ................................................................................5

*Wine & Canvas Dev., LLC v. Roberts*,
  2013 WL 1099895 (S.D. Ind. Mar. 15, 2013)........................................................4

## STATUTES

735 ILCS 5/13-217 ...................................................................................10, 13, 14

735 ILCS 5/13-275 ..............................................................................................10

**<u>INTRODUCTION</u>**

Plaintiffs cannot dispute that this is yet the third carbon-copy lawsuit filed by Carter Page in as many years—with this latest iteration coming "several years" (45 months and counting) after the allegedly defamatory news articles that prompted his judicial voyage. Opp. at 1.[1] Plaintiffs also do not dispute that their Complaint recycles the exact same politically-charged conspiracy theories two other federal courts already rejected. Yet Plaintiffs unapologetically disclaim any responsibility whatsoever for burdening the parties and courts with those baseless suits, suggesting Page was merely stymied by pesky "procedural requirements" and Defendants' supposed "proficiency for concealing" conduct he concedes "learn[ing]" about by "October 2017" at the latest. *Id.* (emphasis added). This, Plaintiffs proclaim, is "finally" the chance for Page to "have his day in court"—the "first opportunity" to fully air his grievances. *Id.*

Enough is enough. Nothing in Plaintiffs' Opposition remedies the overarching and fatal defect of their Complaint—a demonstrable lack of personal jurisdiction over the Defendants. Neither their Complaint nor Opposition comes close to establishing that any Defendant is "at home" in Illinois, and despite cobbling together new (and unsupported) facts in their brief, Plaintiffs fail to muster a cogent theory as to how any Defendant's purported actions "targeted" Illinois—much less how Plaintiffs suffered cognizable harm in this forum. By itself, that jurisdictional defect mandates dismissal.

But even if Plaintiffs could satisfy their jurisdictional burden, their substantive allegations are still plainly deficient to pass Rule 12(b)(6) muster. Plaintiffs use the Opposition as an opportunity to complain publicly about purported "FBI actions against Dr. Page" and "FISA

---

[1] Plaintiffs' Memorandum Of Law In Opposition To Defendants' Motion To Dismiss (Dkt. No. 41) is cited herein as "Opp."—e.g., "Opp. at __." And Defendants' Opening Memorandum Of Law In Support Of Their Motion To Dismiss (Dkt. No. 27) is cited as "Mot."—e.g., "Mot. at __."

applications" that have exactly *nothing* to do with the news articles purportedly underlying their claims, Opp. at 7, and introduce a flurry of new accusations that only underscore the pleading defects of their Complaint. Simply put, Plaintiffs do not—and cannot—point to alleged facts sufficient to state any plausible cause of action, and the Complaint should be dismissed with prejudice accordingly.

## ARGUMENT

### I.  PLAINTIFFS FAIL TO ESTABLISH PERSONAL JURISDICTION

Plaintiffs' Opposition confirms what their Complaint makes clear—that this lawsuit does not belong in Illinois. The Court need proceed no further than a threshold jurisdictional inquiry to properly dispose of this case.

In an attempt to avoid dismissal, Plaintiffs exaggerate Defendants' limited forum contacts and distort the governing legal principles. But setting aside their loud and conclusory proclamations that Defendants' Illinois connections "resounding[ly]" establish jurisdiction under "vast legal precedents," Opp. at 2, Plaintiffs fall far short of demonstrating that any Defendant is "at home" in this State—as they must for a finding of general (or "all-purpose") jurisdiction. And in a case about purportedly defamatory statements made outside of Illinois that allegedly caused "harm" elsewhere, Plaintiffs cannot establish the sort of meaningful nexus between their allegations and this forum that would support specific jurisdiction over any Defendant. These jurisdictional failures are fatal and require dismissal of this action in its entirety. *See* Mot. at 8-14.

### A.  Plaintiffs Cannot Establish That Any Defendant Is "At Home" In Illinois

Plaintiffs recognize, as they must, that general jurisdiction exists only in the rare case where a defendant's "contacts with a forum state are 'so continuous and systematic as to render them essentially at home in the forum state.'" Opp. at 10 (quoting *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Yet Plaintiffs proceed to advocate exactly the sort of

"exorbitant exercise[] of all-purpose jurisdiction" the Supreme Court has specifically rejected. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (rejecting a formulation of general jurisdiction that would subject a defendant to jurisdiction in every state where it conducts significant business). Plaintiffs strain to characterize Defendants' Illinois connections as "continuous and systematic" in the abstract, but do not (and cannot) show that any Defendant's contacts with the State—viewed properly in context—are "*so* constant and pervasive 'as to render [Defendants] essentially at home" here. *Id.* at 122 (emphasis added); *see also Goodyear*, 564 U.S. at 927 ("A corporation's 'continuous activity of some sorts within a state,' . . . 'is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'").

With respect to Perkins Coie, Plaintiffs effectively concede that the firm's "home" is elsewhere. *See* Opp. at 10-11; Mot. at 10-11. Plaintiffs claim that "Perkins Coie's Chicago office is its *third* largest by headcount," and assert that such a "substantial presence" here "undeniably" renders the firm subject to general jurisdiction. Opp. at 10-11. But the Supreme Court's recent precedents require "an appraisal" of an entity's "activities *in their entirety*, nationwide and worldwide." *Daimler*, 571 U.S. at 139 n.20 (emphasis added). By Plaintiffs' own admission, Perkins Coie maintains multiple larger offices outside of Illinois, and more than 85% of the firm's attorneys reside in other states. Opp. at 10; Compl. ¶ 15. Those undisputed facts end the analysis. *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (finding no general jurisdiction over a defendant that owned over 2000 miles of railroad tracks and employed thousands of people in the forum state). Moreover, Plaintiffs simply ignore Defendants' proof that the "Illinois LLC" that makes up part of the firm's membership—and which is not a party to this action—is a Delaware company managed from Washington, D.C. *See* Mot. at 10.

Despite initially reciting the right legal standard, Plaintiffs ultimately try to conjure their own novel jurisdictional hooks. Plaintiffs contend, for example, that statements on the firm's website about "being named one of Chicago's 'Top Workplaces' by the *Chicago Tribune*" are somehow an admission "that Perkins Coie's contact with the state is sufficiently 'extensive and pervasive to approximate physical presence.'" Opp. at 10-11 (citation omitted). But statements on a passive website are insufficient to establish jurisdiction. *See Bell v. Taylor*, 2013 WL 12291882, at *3 (S.D. Ind. May 3, 2013) (rejecting "passive websites" that are "one-way conduits for information by the website operator" as a basis personal jurisdiction); *Wine & Canvas Dev., LLC v. Roberts*, 2013 WL 1099895, at *4 (S.D. Ind. Mar. 15, 2013) (same). By Plaintiffs' logic, Perkins Coie should be subject to general jurisdiction anywhere the firm touts its in-forum work. That cannot be—and is not—the law. *See Daimler*, 571 U.S. at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them.").[2]

Plaintiffs' arguments as to the DNC fare no better. Despite conceding in their Complaint that the DNC "is a national committee . . . with its principal place of business in Washington, D.C.," Compl. ¶ 14, Plaintiffs now baldly contend that the DNC "moved the location of its primary operations to Chicago *in 2008*" to support then-candidate Obama's presidential campaign. Opp.

---

[2] Plaintiffs also argue that general jurisdiction is proper because it would be "neither burdensome nor unforeseen" for Perkins Coie to appear in this Court. Opp. at 10-11. But the Supreme Court has made clear that while certain of its decisions consider the "reasonableness"—including the burden and foreseeability—of subjecting a defendant to litigation in a given forum, such an inquiry is "not . . . a free-floating test." *Daimler*, 571 U.S. at 139 n.20. Rather, the Court has conducted "a multipronged reasonableness check" as "a second step" "when *specific* jurisdiction is at issue." *Id.* (observing that the court should "assess the reasonableness of entertaining the case" only after it first finds that "the connection between the forum and the episode-in-suit" is sufficient to "justify the exercise of specific jurisdiction"). Plaintiffs cannot avoid the stringent "at-home" test for *general* jurisdiction merely by arguing that the second component of the *specific* jurisdictional analysis is met. *See id.* ("When a corporation is genuinely at home in the forum State, . . . any second-step inquiry would be superfluous."). In any event, Plaintiffs equally fail to justify the exercise of specific jurisdiction in this case. *See infra* at 5-7.

at 11 (emphasis added).  That vague and unsubstantiated assertion is irrelevant to assessing the DNC's forum contacts *at the time Plaintiffs commenced this action* in January 2020.  *See Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 877 (7th Cir. 2006) (finding no jurisdiction based on forum contacts from two years earlier); *Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 528 (7th Cir. 2002) ("[J]urisdiction is normally determined as of the date of the filing of the suit.").  Further, if merely "invit[ing] staffers to relocate" temporarily to the site of an active political campaign were enough to render the DNC "at home" in that location (let alone perpetually so), Opp. at 12, the DNC would be subject to all-purpose jurisdiction in virtually every federal court in the country, *see* Compl. ¶ 14 (recognizing that the DNC is a "national" organization).  *Daimler* requires the Court to assess the alleged "magnitude of the defendant's in-state contacts" in context, 571 U.S. at 139 n.20, and Plaintiffs' generic allegations of in-state campaign operations over a decade ago are patently deficient to render the DNC subject to general jurisdiction in Illinois today.  *See* Mot. at 11-12.

As a last-ditch effort, Plaintiffs argue that the fact Perkins Coie and the DNC have participated in at least two lawsuits each "*in* the courts of Illinois" over the past nearly 45 years demonstrates "purposeful availment *of* this state's courts."  Opp. at 12.  Plaintiffs do not cite a single case suggesting prior in-state court appearances subject a party to "all-purpose" jurisdiction in the forum going forward.  On the contrary, courts in this District have specifically rejected "the 'dubious proposition' that being a party to some number of lawsuits in a State can create general jurisdiction over that party in that State."  *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 741, 750-51 (N.D. Ill. 2018) (collecting cases).  In any event, the unsurprising fact that a national political organization and an international law firm have previously appeared in Illinois courts plainly cannot be enough to overcome the exceptionally high bar for general jurisdiction.

## B.    Plaintiffs Fail To Establish Specific Jurisdiction

The thrust of Plaintiffs' allegations is that Defendants commissioned a D.C. firm, Fusion GPS, to conduct political opposition research that eventually led to the publication in 2016 of purportedly defamatory news articles about Page and others, which "devastated" Plaintiffs, Opp. at 1, 22—all residents of Oklahoma.  On their face, these allegations fail to support specific jurisdiction, *see* Mot. at 12-14, and none of the convoluted theories asserted in the Opposition alters that conclusion.

To start, Plaintiffs' failure to establish an in-forum injury forecloses a finding of specific jurisdiction.  *See Sunny Handicraft (H.K.) Ltd. v. Edwards*, 2017 WL 1049842, at *6 (N.D. Ill. Mar. 20, 2017) (finding no "prima facie showing of personal jurisdiction" because "[n]owhere in Plaintiffs' filings do they claim that they felt these injuries in Illinois, much less that Defendants had knowledge that Plaintiffs would be injured in Illinois as a result of Defendants' conduct").  Rather than address this dispositive deficiency, Plaintiffs resort to new jurisdictional theories untethered to the Complaint.

Invoking a conspiracy theory of jurisdiction, Plaintiffs baldy argue that Defendants "conspired against Dr. Page for [their] own political goals," and make the puzzling claim that a 2017 communication from a Chicago-based Perkins Coie attorney—sent long *after* the challenged statements at issue in this case and referenced only obliquely in the Complaint—is "clear evidence" of "directed activity" sufficient to establish specific jurisdiction over every Defendant. Opp. at 15-16.  As an initial matter, "the conspiracy hook" Plaintiffs rely on "will not work here, as the Seventh Circuit has disclaimed it under Illinois law."  *Bovinett v. HomeAdvisor, Inc.*, 2018 WL 1234963, at *3 (N.D. Ill. Mar. 9, 2018) (Leinenweber, J.) (citing *Smith v. Jefferson Cty. Bd. of Educ.*, 378 F. App'x 582, 585-86 (7th Cir. 2010)); *see also In re Honey Transshipping Litig.*, 87 F. Supp. 3d 855, 873 (N.D. Ill. 2015) (observing that "Illinois courts and the Seventh Circuit

have abandoned the conspiracy theory as a basis for personal jurisdiction"). But regardless, Plaintiffs' allegations also fail under their own authority. Unlike the cases they cite (which are inconsistent with more recent Seventh Circuit law in any event), Plaintiffs (1) do not factually allege the existence of a conspiracy, *see infra* at 18, (2) do not allege whether and how a non-party Chicago attorney mentioned for the first time in their Opposition was somehow part of Defendants' purported conspiratorial scheme, and (3) cannot demonstrate how a letter *postdating* Defendants' alleged defamatory statements furthered any purported conspiracy's objectives. *See United Phosphorus Ltd. v. Angus Chem. Co.*, 43 F. Supp. 2d 904, 912 (N.D. Ill. 1999); *Markarian v. Garoogian*, 767 F. Supp. 173, 178 (N.D. Ill. 1991).

Far from "irrefutable evidence" of a "significant nexus," Opp. at 16, Plaintiffs' vague assertions about a third-party letter and imagined political vendetta fail to establish that Defendants directed *any* allegedly tortious conduct at Illinois. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

Plaintiffs' other arguments are equally untenable. Notwithstanding Plaintiffs' conclusory assertions, that some unidentified associates in Perkins Coie's Chicago office allegedly report to one of the individual Defendants (Mr. Elias) is not reflective of "undeniable ties" to the forum, Opp. at 16; nor does Obama for America's retention of legal services "strongly implicate[] directed action . . . in Illinois," *id.* at 17. Plaintiffs cannot cast non-parties' unrelated connections to the State as "clear," "undoubted[]," and "undeniable" proof of specific jurisdiction, *id.* at 16-17, when "[s]pecific jurisdiction requires that the plaintiff's cause of action relate directly to the defendant's contact with the forum," *Shrum v. Big Lots Stores, Inc.*, 2014 WL 6888446, at *3 (C.D. Ill. Dec.

8, 2014); *id.* at *5 ("[C]ontacts between a forum state and a third party or plaintiff—no matter how significant—cannot satisfy minimum contacts.").

## C.   Plaintiffs Concede There Is No Jurisdiction Over The Individual Defendants

The absence of jurisdiction over the two individuals named as Defendants in this action is especially stark.  Plaintiffs make no effort *at all* to explain how general personal jurisdiction could possibly exist with respect to Messrs. Elias and Sussmann—both of whom work and reside outside of Illinois.  *See* Mot. at 11 n.6; Compl. at ¶ 18 (alleging that Messrs. Elias and Sussmann "are citizens of Washington, DC").  Neither individual has any meaningful connection to this forum, let alone is "at home" in the State—and Plaintiffs do not contend otherwise.  There is therefore no real dispute that the Court lacks general jurisdiction over both Individual Defendants.

The Complaint is similarly devoid of allegations adequately establishing either individual Defendant's direct contacts with the forum in relation to the purported facts underlying Plaintiffs' claims.  The most Plaintiffs can muster are generalized assertions of a purported "conspiracy" whose *other* members supposedly participated in unspecified in-state activity.  *See, e.g.*, Opp. at 15 (contending "contact and activities directed towards the forum state" by unidentified participants in an alleged "conspiracy [with] significant involvement in Illinois" should "constitute contact by all Defendants").  As noted, *see supra* at 6, the Seventh Circuit has rejected the so-called "conspiracy theory" of jurisdiction, and Plaintiffs must point to well-pled facts demonstrating each defendant's *own* individual actions within or directed toward the State.  Because Plaintiffs fail to allege relevant forum contacts by either Mr. Elias or Mr. Sussmann, there is no basis on which to find personal jurisdiction exists as to either individual Defendant in Illinois.

## D.   Plaintiffs Are Not Entitled To Jurisdictional Discovery

In a final attempt to prolong these proceedings, Plaintiffs urge the Court to grant jurisdictional discovery.  In support, Plaintiffs contend they have established a "'colorable,' if not

prima facie showing of personal jurisdiction." Opp. at 18. They have not. And Plaintiffs' own authority confirms that "courts will not permit discovery based only upon" the sort of "'bare,' 'attenuated,' or 'unsupported' assertions of personal jurisdiction" presented here. *Gilman Opco LLC v. Lanman Oil Co.*, 2014 WL 1284499, at *6 (N.D. Ill. Mar. 28, 2014).

Moreover, in sharp contrast with the cases they cite, Plaintiffs' Opposition is silent as to the scope of jurisdictional discovery they seek or even the specific information they hope to glean. *See In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*, 136 F. Supp. 3d 968, 976 (N.D. Ill. 2015) (enumerating permissible discovery topics "taken from plaintiffs' suggestions"); *Indag GmbH & Co. v. IMA S.P.A.*, 150 F. Supp. 3d 946, 972-73 (N.D. Ill. 2015) (noting the categories of facts for which the plaintiffs sought discovery); *Calloway v. AT&T Corp.*, 2019 WL 4694724, at *6-7 (N.D. Ill. Sept. 26, 2019) (examining the plaintiffs' proposed interrogatories related to jurisdictional fact issues). Instead, Plaintiffs ask this Court to countenance a boundless fishing expedition based on nothing more than the meager promise that discovery "*should* allow Plaintiffs to 'uncover facts that *might* establish jurisdiction.'" Opp. at 18 (emphases added). Given Plaintiffs' barebones allegations and failure to specify with any degree of particularity the information they seek, Defendants should not be forced to bear the time, burden, and expense of jurisdictional discovery.

## II.    PLAINTIFFS FAIL TO ESTABLISH THAT VENUE IS PROPER

Plaintiffs barely attempt a response to Defendants' argument that venue is lacking. Mot. at 14-15. Instead, Plaintiffs repeat the same deficient allegations animating their assertions of personal jurisdiction—contending a non-party's post-hoc communications somehow make Chicago the nexus of Defendants' relationship to Fusion GPS and, by extension, Plaintiffs' claims. As established, an October 2017 letter cannot "giv[e] rise," Opp. at 20, to Plaintiffs' claims when it was authored and transmitted a full year *after* the challenged statements Plaintiffs attempt to

attribute to Defendants. Given Plaintiffs' failure to establish specific jurisdiction and the undisputed fact that no Defendant resides in this forum, the Northern District of Illinois is not a proper venue in which to adjudicate Plaintiffs' claims.

## III. PLAINTIFFS FAIL TO STATE A VIABLE CAUSE OF ACTION

This Court need not (and should not) reach the merits of Plaintiffs' claims. But regardless, Plaintiffs' 30-page brief—filled to the brim with new, far-fetched, and conclusory allegations—only confirms that the facts pled in the Complaint are woefully inadequate to avoid dismissal. And none of the new allegations sprinkled throughout the Opposition, even if they could properly be considered at this stage, suffices to state a claim. As set forth below, Plaintiffs can neither justify the delay in their untimely filing "several years" after the allegedly defamatory statements occurred, Opp. at 1, nor articulate a cognizable basis for sustaining any of the conspiratorial claims set forth in the Complaint. *See* Mot. at 15-28.

### A. Plaintiffs' Defamation And False Light Claims Are Time-Barred

Plaintiffs concede that a one-year statute of limitations governs their defamation and false light claims, and further admit they were purportedly "defamed in September 2016"—nearly four years ago. Opp. at 1, 12; *see also* Mot. at 15-18. In an attempt to save those stale claims, Plaintiffs now argue that the statute of limitations should toll until October 24, 2017, *and then* 735 ILCS 5/13-217[3]—the Illinois Savings Statute—should extend the limitations period even further to allow this action one year after dismissal of their failed Oklahoma Complaint. Plaintiffs' attempt to revive their defamation and false light claims by relying on the Illinois Savings Statute and equitable tolling or estoppel—*both* of which must succeed in order for these claims to survive—is unavailing.

---

[3] Plaintiffs erroneously cite 735 ILCS 5/13-275 in referring to the Illinois Savings Statute. *See* Opp. at 1.

*Plaintiffs' Time-Barred Claims Do Not Merit Equitable Tolling Or Estoppel*

To invoke equitable tolling, a plaintiff "must show that some 'extraordinary circumstance' prevented him from filing suit and that he had been pursuing his rights diligently." *Molina-Garcia v. Fardon*, 754 F. App'x 475, 477 (7th Cir. 2019) (explaining that "lack of resources and ignorance of the law" do not constitute "extraordinary circumstances that merit equitable tolling"); *see also Am. Family Mut. Ins. Co. v. Plunkett*, 14 N.E.3d 676, 681 (Ill. App. Ct. 1st Dist. 2014) (noting that equitable tolling is an "extraordinary" form of relief that "is rarely applied."). Illinois courts have flatly rejected "that the limitations period should be tolled because [a plaintiff] did not know the identity of each person who made a defamatory statement about him." *Peal v. Lee*, 403 Ill. App. 3d 197, 207-08 (1st Dist. 2010) (holding that the discovery rule meant the limitations period ran from date of the known injury); *see also Castello v. Kalis*, 352 Ill. App. 3d 736, 745 (1st Dist. 2004) ("The law is well-settled that once a party knows or reasonably should know both of his injury and that it was wrongfully caused, the burden is upon the injured person to inquire further as to the existence of a cause of action.").

Plaintiffs cite *no* countervailing authority and instead make a conclusory statement—conspicuously absent from their Complaint[4]—that "Plaintiffs had no way to know of Defendants' hand in their injury, despite the exercise of due diligence." Opp. at 12-13; *see also Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir. 1990) (refusing to apply the equitable tolling doctrine or discovery rule). In fact, the Complaint contradicts these bald assertions and acknowledges that Page knew of any purported injury in "September 2016," via a widely disseminated internet article allegedly aimed at a national audience. Compl. ¶¶ 53, 57, 58, 111;

---

[4] This Court should refuse to consider novel arguments based on allegations not contained in the Complaint. *Connor v. JP Morgan Chase Bank, N.A.*, 2016 WL 7201189, at *3 (N.D. Ill. Mar. 22, 2016) (refusing to address arguments raised for the first time in a response brief because "consideration of a motion to dismiss is limited to the pleadings").

*see also* Opp. at 1; Mot. at 17-18.  Further, Page's September 2017 complaint in the Southern District of New York (the "Oath Complaint") cited the same statements and linked Mr. Steele to Fusion GPS.  Oath Compl. ¶¶ 2, 78.  Consequently, Page's own allegations show that a reasonably diligent plaintiff *would have* investigated claims against "these" Defendants well before October 24, 2017.  *See Guar. Tr. Life Ins. Co. v. Kribbs*, 68 N.E.3d 1046, 1059 (Ill. App. Ct. 1st Dist. 2016).  Accordingly, Plaintiffs cannot toll the statute of limitations beyond September 2017.

Plaintiffs' attempt to invoke equitable estoppel similarly fails.  Opp. at 13.  As Plaintiffs concede (*id.* at 13), equitable estoppel may apply only if Plaintiffs show that the "defendant has *actively misled* the plaintiff, or [] the plaintiff has been prevented from asserting his or her rights in some *extraordinary* way."  *Rosado v. Gonzalez*, 832 F.3d 714, 717 (7th Cir. 2016) (emphases added); *see also Ashafa v. City of Chicago*, 146 F.3d 459, 463 (7th Cir. 1998) (confirming that equitable estoppel applies only if "a defendant takes active steps" to "stop or delay the plaintiff from bringing suit within the limitations period").  To that end, Plaintiffs offer nearly a page and a half of irrelevant accusations *with only a single* passing reference to their Complaint.  Opp. at 13-14.  Specifically, Plaintiffs baldly contend that (1) Defendants "hid the misinformation source" of the statements that allegedly defamed them "by inaccurately labeling the DNC's payments to Perkins Coie as 'LEGAL SERVICES'"; (2) Defendants "were aware of their gross misrepresentations"; (3) "Plaintiffs had neither knowledge nor an ability to uncover Defendants' web of deceit"; (4) "Plaintiffs reasonably relied on Defendants' misinformation"; (5) "reliance was detrimental because Plaintiffs' ability to hold his tortfeasors accountable in court was delayed" and (6) Defendants concealed unspecified "material facts"—all of which "denied Plaintiffs the opportunity to adequately plead their case in court."  *Id.*  Plaintiffs fail to explain how any of those broad-brushed assertions is substantiated by the one paragraph they cite from the Complaint.  *Id.*

at 13;[5] *see Levin v. Grecian*, 974 F. Supp. 2d 1114, 1133 (N.D. Ill. 2013). And absent particularized allegations establishing that Defendant somehow took specific steps "designed to prevent . . . the discovery of the claim," Plaintiffs' resort to equitable appeals must be rejected. *Foster v. Plaut*, 252 Ill. App. 3d 692, 699 (1st Dist. 1993).[6]

## 2. *The Illinois Savings Statute Does Not Apply To This Action*

Even if equitable tolling or estoppel were applicable here (and it is not), Plaintiffs' defamation and false light claims would nonetheless be time-barred for the independent reason that the Illinois Savings Statute is inapposite.[7] Under the Illinois Savings Statute, "a plaintiff is permitted one, and only one, refiling of an action." *Hurst v. Capital Cities Media, Inc.*, 323 Ill. App. 3d 812, 822 (5th Dist. 2001). The Savings Statute "was not intended to permit multiple refilings of the same action," *Timberlake v. Illini Hosp.*, 175 Ill. 2d 159, 163 (1997), and "[a] refiling in either . . . state court or federal court counts as a refiling for the purposes of this rule." *Bhatia v. Vaswani*, 2020 WL 3578004, at *3 (N.D. Ill. July 1, 2020).

Plaintiffs are attempting to side-step that strict limitation here. The present action arises out of the exact same set of transactions and events addressed in Page's 2017 Oath Complaint, which was filed (and dismissed) in the Southern District of New York, as well as the Oklahoma Complaint dismissed in early 2019. *Compare* Oath Compl. ¶ 2, *Page v. Oath Inc.*, No. 17 Civ. 6990 (LGS) (S.D.N.Y. Sept. 14, 2017), Dkt. No. 1 (alleging defamatory statements in a September 23, 2016 Yahoo! article), *with* Okla. Compl. ¶ 3, *Page v. Democratic Nat'l Comm.*, No. 5:18-cv-

---

[5] Paragraph 21 of the Complaint alleges that a "senior Chicago lawyer discussed unique specifics of Perkins Coie's relationship with Fusion GPS, the DNC, and the Clinton Campaign."

[6] As explained *infra*, the Oath Complaint—filed in September 2017—squarely contradicts Plaintiffs' assertion that they lacked knowledge of Defendants' identity before October 24, 2017.

[7] Defendants *do not* "implicitly and necessarily admit the Oklahoma Dismissal qualifies for protection under the Illinois Savings Statute." Opp. at 6, n.4. In fact, Defendants have expressly argued that "735 ILCS 5/13-217 is inapplicable to Plaintiffs' present action because the Complaint constitutes a second refiling of the Oath Complaint." Mot. at 16 n.11.

01019-HE (W.D. Okla. Oct. 15, 2018) (same), *and* Compl. ¶ 60 (same); *see also Skibbe v. U.S. Bank Tr.*, 2017 WL 2506405, at *2, *5 (N.D. Ill. June 9, 2017) (Leinenweber, J.) (describing the "transactional" analysis of cases applicable under the Illinois Savings Statute). Further, because the Oklahoma Complaint was filed over a year after publication of the allegedly defamatory statements, that filing was itself time-barred.[8] Accordingly, Plaintiffs' *third* refiling—and second untimely filing—of the same claims does not warrant protection under the Illinois Savings Statute.

### B. Plaintiffs' Defamation And False Light Claims Also Fail On The Merits

First, Plaintiffs contend they need not allege any defamatory statements about Global Energy and Global Natural Gas because these entities "cannot be distinguished" from Page. Opp. at 22. Plaintiffs' argument distorts the cases cited in support. While a defamatory statement need not reference a plaintiff specifically, "it should appear on the face of the complaint that persons other than the plaintiff and the defendant must have reasonably understood that the [statement] was *about the plaintiff* and that the allegedly libelous expression *related to [him or] her*." *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 925 (7th Cir. 2003) (emphases added). In *Muzikowski*, a fictitious character closely resembled *the plaintiff*, not an entity affiliated with the plaintiff. *Id.*; *see also Bryson v. News Am. Publ'ns, Inc.*, 174 Ill. 2d 77, 87 (1996) (same). Page, Global Energy, and Global Natural Gas are separate legal entities, and the alleged defamation—that Page met with Russian officials—in no way relates to these business entities. *See* Mot. at 18-19. Indeed, despite two prior defamation lawsuits challenging the same underlying statements, it occurred to Page only as an afterthought in this third iteration to add Global Energy and Global Natural Gas as parties—underscoring their irrelevance to the events alleged.

---

[8] Plaintiffs' reading of the Illinois Saving Statute would create a loophole, effectively allowing a party to extend any limitations period indefinitely. By Plaintiffs' logic, an action filed within one year of *any untimely action* in another state would restart and extend the statute of limitations by a year from dismissal of the foreign action. That is not the law.

In an effort to avoid dismissal at the pleading stage, Plaintiffs next assert that "it is impossible to rule as a matter of law [on] the standards of 'substantially true.'" Opp. at 23. This is wrong. Illinois courts routinely dismiss defamation claims at the pleading stage where the "gist" of the statements was substantially true. *See Gist v. Macon Cty. Sheriff's Dep't*, 284 Ill. App. 3d 367, 371 (4th Dist. 1996) (affirming dismissal of defamation claim based on substantially true statements and holding substantial truth inquiry "is properly one of law"). And that principle applies here. Page admits he had significant business and political ties to Russia, *see* Okla. Compl. ¶¶ 7, 46, 78-80, yet contends Defendants falsely suggested that he "act[ed] as an intermediary for Russia" and "coordinat[ed] with the Russian government for the 2016 U.S. Presidential Election." *Compare* Opp. at 23, *with* Mot. at 20. The gist of that admitted fact and Defendants' alleged statements is the same, and that justifies dismissal. *See Gist*, 284 Ill. App. 3d at 371 (rejecting the need for a "fussy insistence upon literal accuracy").[9]

Finally, Plaintiffs passively dispute Page's status as a public figure, which—if proven— would trigger a heightened pleading standard. Opp. at 25. Despite boasting of his contributions elsewhere, Page now attempts to downplay his role as "an *informal* member of a *volunteer* foreign policy advisory committee to then-candidate Donald Trump's campaign." Opp. at 4 (emphasis added). But Plaintiffs' unilateral characterizations are irrelevant, and courts have consistently identified persons in similar positions to be at least limited-purpose public figures. *See, e.g.*, *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 142 (D.D.C. 2017) (granting motion to

---

[9] Plaintiffs rely almost exclusively on extraneous evidence to debate the truthfulness of Defendants' alleged statements. *See* Opp. at 23. The Opposition cites *once* to the Complaint while relying extensively on excerpts from an "OIG Report" that are absent from the Complaint. *Id.* at 23 nn.19-21. The Court should disregard arguments based on new allegations from Plaintiffs' Opposition and must confine its analysis to the Complaint. *See supra* at 11 n.4. In any event, the OIG Report does not alter the analysis because it only repeats the basic allegations (which Page openly admits), that he met and was "in discussion with" Russian officials. *See* Opp. at 23 n.20.

dismiss and finding Deripaska—a Russian oligarch—to be a limited-purpose public figure given his relationship with the Trump campaign). Page is no different, and, consequently, the actual malice standard applies.[10] *See* Mot. at 22-23.

Plaintiffs' defamation and false light claims fail that stringent pleading standard. Plaintiffs wrongly suggest that "all that is required" to plead actual malice is an allegation that "Defendants disseminated statements with knowledge that they were false or with reckless disregard of whether they were false or not." Opp. at 27 (quoting Compl. ¶ 79). But such "conclusory allegations" are inadequate. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (rejecting allegations that "petitioners 'knew of, condoned, and willfully and maliciously agreed to subject him to harsh conditions of confinement'"); *see also Coghlan v. Beck*, 984 N.E.2d 132, 150 (Ill. App. Ct. 1st Dist. 2013) (dismissing defamation claim where "Plaintiffs' complaint made the bare conclusory allegation that Beck republished the letter 'maliciously' and 'knowing that the statements . . . were false'").

Cognizant of the Complaint's inadequacy, Plaintiffs try to "embellish the conclusory allegations of the Complaint" by relying on ex-post reports to attack the veracity of Defendants' 2016 statements. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984); *see* Opp. at 23 (citing to sections of 2019 OIG Report absent from the Complaint). But these post-dated materials logically cannot establish Defendants' knowledge of falsity in 2016—*at the time the statements were made*. *See Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) (requiring "actual malice at the time of publication"). At best, Plaintiffs insinuate that Defendants should have investigated the accuracy of the Steele Dossier before publication. *See*

---

[10] Plaintiffs' reliance on *Hutchinson v. Proxmire* is misplaced because the plaintiff there, unlike Page, "at no time assumed any role of public prominence." 443 U.S. 111, 135 (1979).

Compl. ¶¶ 79-92. "But failure to investigate is precisely what the Supreme Court has said is insufficient to establish reckless disregard for the truth." *Pippen*, 734 F.3d at 614.[11]

### C. Plaintiffs Have Not Pled Tortious Interference

Plaintiffs also fail to remedy their deficient claim for tortious interference. Plaintiffs contend in their Opposition that the Complaint "clearly allege[s] they had business expectancies in their relationship with an identifiable class of third parties—the 15 energy companies and financial firms that are consumers of services provided by Plaintiffs." Opp. at 28 (citing Compl. ¶ 139).[12] Plaintiffs argue that that they need not name the specific third parties involved. This Court, however, requires "more than a mere hope" of winning a contract, and a plaintiff must plead facts establishing a concrete expectation of economic gain. *See Blaum v. Triad Isotopes, Inc.*, 104 F. Supp. 3d 901, 931 (N.D. Ill. 2015) (quoting *Quadro Enters., Inc. v. Avery Dennison Corp.*, 2000 WL 1029176, at *10 (N.D. Ill. July 26, 2000) (finding a legitimate business expectancy in a *continuing* contractual relationship but rejecting a speculative expectancy where a contract "was up for competitive bidding")). Here, the Complaint (1) is devoid of any details regarding Plaintiffs' purported relationships with the fifteen listed entities; (2) does not allege a single prior transaction or specific prospective contract with the Dubai Mercantile Exchange; and (3) includes only vague statements about ongoing "negotiations" with Samruk-Kazyna, without any indication of existing business relationships or even the status of the parties' purported

---

[11] Plaintiffs' arguments regarding their false light claim are flawed for the same reasons. *See* Opp. at 26-27; *see also* Mot. at 24-25.

[12] Plaintiffs' assertion that Defendants "concede the existence of two business expectancies" with "Samruk-Kazyna[] and . . . the Dubai Mercantile Exchange" is difficult to comprehend, especially because Plaintiffs cite only to their own Complaint as support for that supposed "concession." Opp. at 28 (citing Compl. ¶ 98). Defendants devoted two paragraphs of their Opening Brief to explaining Plaintiffs' failure to plead an essential element of their claim—namely, "that Defendants' actions were *directed toward a third party*." Mot. at 27-28. It is unclear how Plaintiffs derive from that argument an admission that Plaintiffs had a legitimate expectation of business with the entities identified, and Defendants make no such concession.

discussions. Compl. ¶¶ 95-99, 139. These allegations fall well short of establishing a plausible business expectation under Illinois law, and Plaintiffs' Opposition fails to overcome that pleading failure. *See* Mot. at 27; *Kiebala v. Boris*, 2017 WL 4339947, at *4 (N.D. Ill. Sept. 29, 2017).

In any event, Plaintiffs simply ignore that Defendants' alleged actions were not *directed* towards any third party. Opp. at 28-29; *see F:A J Kikson v. Underwriters Labs., Inc.*, 492 F.3d 794, 800 (7th Cir. 2007) ("Actions that form the basis of a tortious interference claim must be directed at third-party business prospects."). Defendants do not (because they cannot) argue against the proposition that "a plaintiff must assert that there has been interference as a result of conduct directed by the defendant toward a third party." *Premier Transp., Ltd. v. Nextel Commc'ns, Inc.*, 2002 WL 31507167, at *2 (N.D. Ill. Nov. 12, 2002) ("[T]here is a long line of cases—both from the Illinois appellate courts and from federal courts within this district— explaining that the element of interference requires more than mere allegations of conduct between the plaintiff and defendant."). Instead, Plaintiffs offer the speculative and unsupported assertion that Defendants must have learned of Plaintiffs' business relationships by searching Page's "business records." Opp. at 28. But even assuming such searches occurred (they did not), the Complaint is nonetheless devoid of any facts reflecting actions *directed* toward any third party. *See* Compl. ¶¶ 95-99; Mot. at 27-28.. Plaintiffs admit as much in their Opposition, arguing "Defendants *targeted Dr. Page*." Opp. at 29. But absent well-pled allegations that Defendants targeted a third party with whom Page was engaged, Plaintiffs' tortious interference claims cannot survive. *See Premier Transport*, 2002 WL 31507167, at *2 (collecting cases).

### D.     Plaintiffs Have Not Pled Conspiracy

Plaintiffs do not dispute that their conspiracy claim fails if the underlying tort claims are time-barred or dismissed on the merits. In any event, Plaintiffs' generalized and conclusory allegations about interactions between Defendants and Fusion GPS in no way evidence an

agreement to defame Page. Opp. at 30; *see Redelmann v. Claire Sprayway, Inc.*, 375 Ill. App. 3d 912, 923 (1st Dist. 2007). "[M]ere[ly] characteriz[ing] a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss," *id.*, and Plaintiffs' resort to that tactic here dooms their conspiracy claim. Mot. at 25-26.

## IV.    DISMISSAL WITH PREJUDICE IS APPROPRIATE

Dismissal with prejudice is appropriate where, as here, Plaintiffs cannot cure the Complaint's pleading deficiencies. *See James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 400-01 (7th Cir. 2006) (affirming dismissal with prejudice where the district court "could have quite reasonably believed that an amended complaint would suffer the same fatal flaws as the one before it."); *see also* Mot. at 28-29. Further, the Seventh Circuit has made clear that "courts are within their discretion to dismiss with prejudice where a party does not make . . . a request or showing" as to potential amendment. *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) (rejecting plaintiff's contention that the "lack of an explicit request is of no consequence"). Plaintiffs here have not sought leave to amend, much less explained how they "can cure [the] infirmities in their complaint by amending and fleshing out the details of their claim." *Id.* Nor could they—even at the outset, there is simply no set of additional facts that Plaintiffs could possibly allege (let alone which were not available to Plaintiffs at the time of their initial pleading in January 2020) that would support a finding of jurisdiction as to any Defendant.

Plaintiffs should not be permitted to continue to drain the resources of this Court and the Defendants by re-hashing their tired allegations once again, and this Court should dismiss Plaintiffs' Complaint with prejudice.

## CONCLUSION

For these and the further reasons stated in Defendants' Opening Brief, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint with prejudice.

Dated: July 15, 2020

Respectfully submitted,

/s/  Terra Reynolds

Terra Reynolds (Bar No. 6278858)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
terra.reynolds@lw.com

Stephen P. Barry (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004
Telephone: (202) 637-2200
stephen.barry@lw.com

Nicholas L. McQuaid (*pro hac vice*)
Matthew S. Salerno (*pro hac vice*)
LATHAM & WATKINS LLP
885 Third Avenue
New York, N.Y. 10022
Telephone: (212) 906-1200
nicholas.mcquaid@lw.com
matthew.salerno@lw.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel registered for ECF.

/s/ Terra Reynolds
Terra Reynolds (Bar No. 6278858)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
terra.reynolds@lw.com

*Counsel for Defendants*