# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 20-2781

CARTER PAGE, an individual, *et al.*,

*Plaintiffs-Appellants*,

v.

DEMOCRATIC NATIONAL COMMITTEE, an unincorporated association, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-671 — **Harry D. Leinenweber**, *Judge*.

ARGUED APRIL 21, 2021 — DECIDED JUNE 21, 2021

Before SCUDDER, ST. EVE, and KIRSCH, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Carter Page, a former advisor to the Donald J. Trump Presidential Campaign, filed suit against the Democratic National Committee, a subsidiary DNC Services Corporation, the law firm Perkins Coie LLP, and two Perkins Coie partners. Page alleges various acts of defamation based on news stories published in the fall of 2016. Having advanced only violations of state law, and further alleging

Case: 1:20-cv-00671 Document #: 56 Filed: 07/13/21 Page 2 of 15 PageID #:356
Case: 20-2781    Document: 00713843658    Filed: 07/13/2021    Pages: 15

2                                                              No. 20-2781

that no defendant is a citizen of his home state of Oklahoma, Page relies on diversity jurisdiction as his gateway into federal court.

The district court dismissed the case for lack of personal jurisdiction. Upon reviewing Page's notice of appeal and accompanying docketing statement, we questioned the existence of subject matter jurisdiction on the basis that Perkins Coie (with a few of its U.S. based partners working and living abroad) may not qualify as a proper defendant for purposes of diversity jurisdiction under 28 U.S.C. § 1332. Our concern proved accurate. So, while we have no reason to question the district court's conclusion on personal jurisdiction, we affirm the dismissal of Page's complaint for lack of subject matter jurisdiction.

# I

Carter Page served as a foreign policy advisor to former President Donald Trump's 2016 campaign. In his complaint, Page alleged that Perkins Coie and the DNC retained a company called Fusion GPS to conduct opposition research on then-candidate Trump. Fusion GPS, the complaint continued, engaged the services of Christopher Steele, who drafted various memoranda including two that mentioned meetings during the campaign between Page and Russian officials.

Page also alleged that Perkins Coie facilitated meetings between Fusion GPS and news outlets that ultimately led to the publication of stories reporting these allegations of contacts between the Trump campaign and Russian officials. Specifically, Page's complaint identified a Yahoo! News article from September 23, 2016 reporting on the supposed meetings with

Russian officials. Page reacted by suing Perkins Coie, the DNC, and the individual defendants for defamation.

Page initially filed a *pro se* complaint in the Western District of Oklahoma, his state of residence. After the district court dismissed the claim for lack of personal jurisdiction, Page refiled his suit in the Northern District of Illinois with the assistance of retained counsel.

The district court in Illinois likewise dismissed all claims for lack of personal jurisdiction. The district court concluded that the complaint did not allege facts sufficient to establish specific or general jurisdiction in Illinois. Page's complaint, the district court explained, recounted only actions performed outside of Illinois by persons from other states, with no accompanying allegation that the defendants targeted Illinois with the allegedly defamatory news story.

Page appeals and, in an attempt to establish closer ties to Illinois, now reframes his allegations as centering on the role of Perkins Coie's general counsel, Matthew Gehringer, who works out of the firm's Chicago office. Though we see few facts in the complaint supporting these alleged contacts with Illinois, we find ourselves confronted with a more fundamental issue—whether this case belongs in any federal court at all.

Our review of the citizenship of the parties involved leaves us of the firm conviction that we lack subject matter jurisdiction. We therefore affirm the district court's dismissal of Page's complaint.

## II

### A

Article III of the Constitution extends the "judicial Power" to nine specified categories of Cases and Controversies, including Controversies "between Citizens of different States." But constitutional authorization, while necessary, is not sufficient to empower a federal court to resolve a Controversy between citizens of different states. Congressional authorization also must exist. See *Sheldon v. Sill*, 49 U.S. (8 How.) 441, 448–49 (1850) (explaining that Congress's authority to create the lower federal courts brings with it the discretion to confer jurisdiction less than that allowed by Article III). Congress first authorized diversity jurisdiction in the Judiciary Act of 1789.

Today's diversity jurisdiction statute finds its home in 28 U.S.C. § 1332. The enactment establishes federal jurisdiction over "all civil actions where the matter in controversy exceeds" $75,000 and, as relevant here, if the action is between "citizens of different States" or "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a).

The party invoking diversity jurisdiction (most often the plaintiff) bears the burden of showing its existence. See *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010). And, as the Supreme Court has long instructed, federal courts, as courts of limited jurisdiction, must make their own inquiry to ensure that all statutory requirements are met before exercising jurisdiction. See *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900) ("On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not

otherwise suggested, and without respect to the relation of the parties to it.").

With diversity jurisdiction, the proper inquiry must account for each statutory requirement:

*Amount in Controversy.* The statutory implementation of diversity jurisdiction has always been tied to a minimum dollar amount at issue in the underlying dispute—the idea being that the federal courts should not become an interstate small claims court. See R. Marcus et al., *Civil Procedure a Modern Approach* 878 (2d ed. 2018). The Judiciary Act of 1789 set that amount at $500. See Section 11, 1 Stat. 73, 78. Today it is $75,000. The plaintiff must allege that the controversy entails a dispute over more than $75,000, exclusive of interests and costs. See 28 U.S.C. § 1332(a). The burden of doing so is not heavy and dismissal is warranted only if it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Saint Paul Mercury Indem. Co., v. Red Cab Co.*, 303 U.S. 283, 289 (1938).

Page's complaint does not specify the amount of damages he seeks, but he does more generally advance a good-faith request for more than the $75,000 jurisdictional minimum. Given the nature of the allegations, and the types of monetary damages implicated by the complaint, we have no reason to question the sufficiency of his pleading as to the amount in controversy. See *id.* at 288 ("[U]nless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." (footnote omitted)).

*Determining Citizenship.* By the terms of § 1332(a), Congress also hinged the existence of diversity jurisdiction on the

"citizenship" of the parties involved. The inquiry here can be complex depending on the parties to the dispute.

Starting on the simpler side, it has long been established that natural persons are typically a citizen of the state in which they reside or—to be more precise—are "domiciled." See *Gilbert v. David*, 235 U.S. 561, 569 (1915); see also 13E Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3612 (3d ed. 2021) (explaining with great clarity how federal courts determine a person's domicile for purposes of jurisdictional citizenship); Erwin Chemerinsky, *Federal Jurisdiction* § 5.3.3 (7th ed. 2016) (providing another excellent overview of how courts determine the citizenship of the parties as part of assessing diversity jurisdiction). An individual can have only one domicile at a time. See *Williamson v. Osenton*, 232 U.S. 619, 625 (1914).

When it comes to corporations, however, the diversity statute itself makes clear that a corporation is a citizen of both its state of incorporation and the state in which it maintains its "principal place of business." See 28 U.S.C. § 1332(c)(1). The Supreme Court has determined that a corporation's principal place of business is the same as its "nerve center," or "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp.*, 559 U.S. at 80.

Determining the citizenship of other forms of business associations is often more difficult. Partnerships, for example, are citizens of every state in which an individual partner is a citizen. See *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990). The same rule applies to other unincorporated entities, like limited liability companies, whose citizenship is also determined by the citizenship of its "members." See *Americold*

No. 20-2781 7

*Realty Trust v. Conagra Foods, Inc.*, 577 U.S. 378, 381–82 (2016). Think about the size of many of today's partnerships, whether law firms, accounting firms, consulting firms, and so on. It is often no easy task for a plaintiff to discern the domicile (and, by extension, citizenship) of each partner or member. See *Hart v. Terminex Int'l*, 336 F.3d 541, 543 (7th Cir. 2003) (observing that tracing the citizenship of unincorporated associations "may create some extra work for the diligent litigant, and for those with less diligence the limited partnership has become a notorious source of jurisdictional complications" (internal quotation marks omitted)).

Add another layer of complexity. Some individuals or entities are not considered to be citizens of any state. Recall that the diversity statute creates jurisdiction only over suits between citizens of different states, citizens of a state and a foreign citizen, or foreign citizens living in the United States. See 28 U.S.C. § 1332(a). The Supreme Court has interpreted this statutory list to exclude United States citizens who are domiciled abroad. See *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828–29 (1989). Such individuals are not "citizens" of any state for purposes of the statute because they are not domiciled in a state. They are, in a word, "stateless." See *id.* at 828. Nor, of course, would United States citizens living in another nation fall within the statute's understanding of "foreign citizens." It takes more than living abroad to be a citizen of the foreign nation.

Adhering to the Supreme Court's instruction in *Newman-Green*, we have consistently held that United States citizens domiciled abroad cannot be sued in diversity. See, *e.g.*, *Winforge, Inc. v. Coachmen Indus., Inc.*, 691 F.3d 856, 867 (7th Cir. 2012) ("[A] United States citizen who establishes domicile in

a foreign country is no longer a citizen of any State of the United States and destroys complete diversity under 28 U.S.C. § 1332."); *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 805 (7th Cir. 1997) (same); *Sadat v. Mertes*, 615 F.2d 1176, 1180, 1182 (7th Cir. 1980) (pre-*Newman-Green* case reaching the same conclusion). Federal courts, then, lack jurisdiction over these so-called "stateless" citizens if the only basis for subject matter jurisdiction is the diversity statute. See *Newman-Green*, 490 U.S. at 828–29.

*The Complete Diversity Requirement.* For well over 200 years, the Supreme Court has interpreted statutory diversity jurisdiction to require "complete diversity" between the parties. See *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806). Usually this means that a federal court must satisfy itself that no party on the plaintiff's side of the suit shares citizenship with any party on the defendant's side. See *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) ("A case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State."). With limited exceptions for class action suits not relevant here, shared citizenship between just one party on both sides of the lawsuit destroys complete diversity. See *id.*

Though complete diversity typically hinges on whether any parties on both sides of a lawsuit share citizenship, there is another nuanced and sometimes overlooked component to the inquiry: all parties must fall within the jurisdiction created by the diversity statute. Put another way, if a party cannot sue or be sued under one of the provisions of the diversity statute, the suit lacks complete diversity. See *Kamel*, 108 F.3d at 805

("When a plaintiff sues multiple defendants in a diversity action, complete diversity must be present. That is, the plaintiff must satisfy the diversity requirements for each defendant or else encounter dismissal." (citing *Newman-Green*, 490 U.S. at 829)). What this means here is that stateless citizens—because they are not (by definition) a citizen of a state, as § 1332(a) requires—destroy complete diversity just as much as a defendant who shares citizenship with a plaintiff.

All of this background brings us to the question presented: whether a partnership—here the law firm Perkins Coie—made up of at least one, individual "stateless citizen" partner can be sued in diversity. We conclude that it cannot.

B

All agree that the only alleged basis for federal jurisdiction in this case is the diversity statute. And nobody questions whether the amount in controversy exceeds $75,000. So the question of our subject matter jurisdiction depends on the presence, or absence, of complete diversity.

Carter Page is a citizen of Oklahoma. The two LLC plaintiffs—Global Energy LLC and Global Natural Gas LLC—are based in Oklahoma and Page, a citizen of Oklahoma, is the only member. This means the LLC plaintiffs are also citizens of Oklahoma.

The Democratic National Committee is registered as a nonprofit corporation under the name "DNC Services Corp./Dem. Nat'l Committee." It is a citizen of Washington, D.C., where it is incorporated and maintains its headquarters. Perkins Coie is a limited liability partnership and so its citizenship depends on the citizenship of each individual partner. None of Perkins Coie's partners, including the two

named defendants, Marc Elias and Michael Sussmann, is a citizen of Oklahoma.

So far, so good. If our analysis could stop there, we would conclude there is complete diversity. But we need to go a step further. In response to our concerns regarding subject matter jurisdiction, Perkins Coie submitted affidavits from three individual partners who are U.S. citizens domiciled in China: Yun (Louise) Lu, Scott Palmer, and James M. Zimmerman. And, for his part, Page, in his amended jurisdictional statement, identified these three individuals (along with several others) as living in either Shanghai or Beijing, China.

The question, then, is whether the stateless status of these individual partners must be attributed to Perkins Coie, rendering the partnership itself (as a named defendant) stateless and thereby destroying complete diversity and our authority to hear this case.

### III

### A

The Supreme Court has not explicitly answered this question. But the Court has held both that a stateless citizen cannot be sued in diversity (see *Newman-Green*, 490 U.S. at 828–29) and that the citizenship of a partnership is based on the citizenship of each individual partner (see *Carden*, 494 U.S. at 195–96). Whether reading these two rules together requires finding that a partnership composed of at least one stateless citizen is itself stateless—a concept we refer to as attribution of statelessness—remains unresolved by the Court.

To be sure, the Court seemed to get close to answering the question (albeit in dicta) in *Lincoln Prop. Co. v. Roche*, 546 U.S. 81 (2005). In the course of holding that a diverse defendant

could remove a case to federal court, the Court summarized *Carden* by observing that "for diversity purposes, a partnership entity, unlike a corporation, does not rank as a citizen; to meet the complete diversity requirement, all partners, limited as well as general *must be diverse from* all parties on the opposing side." *Id.* at 84 n.1 (emphasis added). It is possible to read this language as requiring all partners to be suable in diversity—in other words, that no partner be a stateless citizen. In time the Court is sure to confront the question more squarely.

Our court, too, has seemed to come close to saying that an individual partner's stateless status makes the partnership itself stateless. Indeed, we have assumed this to be true in at least one prior case. See *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003) ("One of Scott & Aylen's partners is a U.S. citizen domiciled in Canada; she has no state citizenship, so the diversity jurisdiction is unavailable."). But we have never squarely resolved the issue when it was outcome determinative. Doing so now, we hold that a partnership made up of at least one stateless citizen is itself stateless and cannot be sued in diversity.

Every other circuit to have confronted the question has reached the same conclusion. See *D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra*, 661 F.3d 124, 127 (1st Cir. 2011) ("Therefore, if even one of Zwirn's members is another unincorporated association, and if that association has one member or partner that is either a stateless person or an entity treated like a stateless person, we would not have diversity jurisdiction over this matter."); *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001) ("[I]f Skadden has among its partners any U.S. citizens who are domiciled abroad, then Skadden and Herrick (which is a citizen of Florida) are non-

diverse."); *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 184–85 (3d Cir. 2008) ("Because Morgan Lewis has a stateless partner, and thus, all partners of Morgan Lewis are not diverse from all parties on the opposing side, the district court correctly held that it lacked diversity jurisdiction over this action."); *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, 796 F.3d 520, 523 n.1 (5th Cir. 2015) ("[T]he addition of Skadden defeated diversity jurisdiction because Skadden, a partnership whose members include U.S. citizens domiciled abroad, is stateless for the purposes of diversity jurisdiction." (citations omitted)).

We find the Third Circuit's reasoning in *Swiger* most persuasive. In *Swiger*, the district court dismissed the case for lack of diversity jurisdiction because one defendant, the law firm Morgan Lewis, had at least one individual partner who was a U.S. citizen domiciled in the United Kingdom. See 540 F.3d at 181. In affirming the dismissal, the Third Circuit recognized the principles underpinning *Newman-Green* and *Carden* and synthesized them to mean that partnerships cannot be sued in diversity if any individual partner could not either. See *id.* at 184. The court emphasized that the partnership as an entity (and the named defendant) has no citizenship. See *id.* at 185. Thus, the only way to determine citizenship for diversity purposes is to look at the individual partners—an analytical path repeatedly endorsed by the Supreme Court. See, *e.g.*, *Lincoln Prop. Co.*, 546 U.S. 81; *Carden*, 494 U.S. 185.

The Third Circuit put the punchline this way: because citizenship exists only through the citizenship of the partners, any single "non-diverse" partner destroys diversity. See *Swiger*, 540 F.3d at 185. And because a "stateless" citizen cannot sue or be sued in diversity—they are "non-diverse"—a single stateless partner destroys diversity just as much as

would a partner residing in the same state as a plaintiff. See *id*.

We adhere to this same reasoning and conclude that Perkins Coie (as a named defendant) takes on the stateless status of its individual partners Lu, Palmer, and Zimmerman. This attribution of statelessness destroys complete diversity and deprived the district court of the power to hear this case.

We also reject Page's claim, advanced for the first time in two sentences in his reply brief in our court, that jurisdictional discovery is needed to establish facts related to Perkins Coie's citizenship. Page waived this argument by failing to develop it in any meaningful way. Indeed, Page cites no authority supporting his cursory request. See *Shipley v. Chicago Bd. of Election Commissioners*, 947 F.3d 1056, 1063 (7th Cir. 2020). ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived.") Nor did Page (until oral argument) question the authenticity or sufficiency of the affidavits submitted by Perkins Coie establishing the citizenship or domicile of Lu, Palmer, and Zimmerman. We have no independent reason to doubt the veracity of these sworn statements. Page waived his contrary contention, and we deny his request for jurisdictional discovery on the point.

B

We acknowledge that in today's global business environment, where multinational entities exist in every facet of commerce, this result may strike some as impractical. But keep in mind that when Congress enacted the Judiciary Act of 1789, and in the subsequent decades when the Supreme Court decided many of its significant diversity jurisdiction cases, most of today's business forms did not exist. And those that did,

like the corporation, depended entirely on the State for their very existence. It is hardly surprising then that application of this lengthy body of law to the interpretation of a statute which traces its own origins back to our nation's infancy leads to limitations on our own jurisdiction. See *Swiger*, 540 F.3d at 186 (McKee, J., concurring in the judgment) (offering the same observations).

Right to it, Page makes worthy policy arguments. Perhaps instead of attributing a partner's statelessness to the partnership, the better approach would be to simply consider stateless partners as a nullity. Instead, we could look only to the citizenship of individual partners who have state citizenship for purposes of the diversity statute.

But diversity jurisdiction is implemented by statute, and on that point the language enacted into law by Congress and then interpreted by the Supreme Court controls our decision. In our view, § 1332, by its terms, requires that each individual partner be subject to diversity jurisdiction. If this outcome seems to defy modern commercial realities, the responsibility for amending § 1332—updating it to account for today's forms of business associations—rests with Congress. The Supreme Court made this precise point in *Carden*, explaining that "[s]uch accommodation is not only performed more legitimately by Congress than by courts, but it is performed more intelligently by legislation than by interpretation of the statutory word 'citizen.'" 494 U.S. at 197.

We therefore limit our holding to the result we conclude is compelled by § 1332 in its present form.

Case: 1:20-cv-00671 Document #: 56 Filed: 07/13/21 Page 15 of 15 PageID #:369
Case: 20-2781     Document: 00713843658     Filed: 07/13/2021     Pages: 15

No. 20-2781                                                                  15

## IV

We close by acknowledging that the district court acted within its discretion in addressing questions of personal jurisdiction without first ensuring itself of its own subject matter jurisdiction. See *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999) (explaining that where "a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction"). We, however, have chosen to chart a different course, finding it important to clarify the attribution of statelessness question presented by the facts of this case.

Having taken this route and determined that we lack subject matter jurisdiction, we cannot now reach the question of personal jurisdiction. See *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

We also are cognizant of the fact that a dismissal for lack of subject matter jurisdiction cannot be with prejudice. See *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 581–82 (7th Cir. 2019). We, therefore, AFFIRM the district court's dismissal, but modify the judgment to reflect a dismissal without prejudice.

CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit